**Tim Michael CRUSE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 3344.

Supreme Court of Alaska.

Oct. 13, 1978.

---

5. Civil Rule 56.

Sue Ellen Tatter, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

David Shimek and John Scukanec, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, CONNOR, BURKE, and MATTHEWS, Justices, and DIMOND, Senior Justice.

## OPINION

CONNOR, Justice.

Appellant Tim Michael Cruse appeals from the judgment and commitment of the superior court finding him guilty of robbery.[1] The issue presented by this appeal is whether the trial court erred in denying appellant's motion to suppress evidence seized, pursuant to a warrant, from his automobile trunk when the trunk had previously been searched without a warrant.

On September 30, 1976, Stephan Pittman, field man at the Sundowner Drive-in Theater in Anchorage, had an altercation with three young men in a white car who were disturbing other patrons. Pittman got his supervisor's permission to eject the troublemakers, but then noticed that the car was already leaving the theater. He watched it stop briefly at the theater gate and then depart. Pittman spent the next 1½ to 2 minutes at the theater's concession stand, and upon leaving the area, was approached by the theater cashier, Randall Peck. Peck said that he had just been robbed. Pittman described the white car and its occupants, and Peck agreed that the description fit his assailants.

Anchorage Police Sergeant Archie Hutchinson responded to the robbery call. After interviewing Pittman and Peck, he described the suspects over the police radio: a white car with license number ADF 230; three young white men without facial hair; one wearing a light brown jacket; one wearing a blue down vest or jacket; one with long, brown, wavy hair; another with bushy hair.

A State Trooper, participating in a trooper robbery stakeout of several stores in the area, advised all units that a white Mercury matching the description was parked at a liquor store and that suspicious activity was afoot. When the Mercury left the parking lot, three troopers followed it. They stopped the Mercury in a shopping center parking lot, and other stakeout units, as well as a helicopter with a spotlight, converged on the scene. One trooper had the suspects lie on the ground away from the car and frisked them, while another trooper covered him with a shotgun. Trooper Leo J. Brandlen reached into the Mercury to turn off the ignition and scanned the interior of the car for weapons, money or other evidence of the robbery. He saw some jackets, gloves, and, in the back seat area, a shopping bag containing baggies of material he thought was marijuana.

Brandlen, believing the suspects were under arrest although no words had yet been spoken to that effect, called for a wrecker to impound the vehicle. Following standard trooper policy to inventory the contents of all vehicles impounded for other than evidentiary purposes, he opened the trunk to inventory its contents.

Sergeant Hutchinson arrived as Brandlen was opening the trunk. He observed a long-barreled revolver, a garden hose, and a brown paper bag. He then advised Brandlen that the Anchorage Police Department would take charge of the case and that he wanted the car for evidence. He closed the trunk until he could get a warrant. Anchorage police do not inventory impounded vehicles as a matter of course. Hutchinson later made sure that the car was secure in the police garage and turned the keys over to a police investigator.

The investigator prepared an affidavit to secure a search warrant. He and an assistant district attorney agreed not to tell the district court judge about the prior search until after the judge signed the warrant because there was sufficient other probable cause to support the warrant. The warrant issued and a full search was made of the car.

1. AS 11.15.240.

**1144**

■ Cruse filed a motion to suppress all of the items seized in the search.[2] After a hearing, the motion was denied and Cruse entered his nolo contendere plea, reserving the right to appeal the unfavorable ruling on his suppression motion.[3] On appeal, Cruse challenges only the propriety of the search of the trunk from which a long-barreled gun and approximately $990 were seized. He argues that his arrest and Trooper Brandlen's original warrantless search of the trunk were illegal and, therefore, all evidence gleaned from that search and the subsequent warrant search must be suppressed.

■ Appellant contends that there was insufficient probable cause to arrest him because the description of the robbery suspects broadcast over the police radio was inconclusive and was provided primarily by Pittman who was not an eyewitness to the robbery. He also stresses that the "suspicious activity" reported at the liquor store was insufficient to support an arrest.[4]

■ The test for probable cause to sustain an arrest was stated in *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890 (1949):[5]

> "Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

The white Mercury was first noticed because it matched the radio description of the fleeing suspects. The liquor store where the Mercury had stopped was quite close to the theater and very little time had passed since the description was broadcast. It makes no difference that the information supplying the probable cause came from a police radio rather than through direct contact between the victim and the arresting officer as long as the transmitting officer had a reasonable basis to believe the description he was given. *Mattern v. State*, 500 P.2d 228, 232–233 (Alaska 1972). Although Peck stated that he could not positively identify his assailants, he did provide Hutchinson with a general description of their body sizes and clothing. It is true that Pittman did not witness the actual robbery, but the very short time interval between the time he saw the white car stop at the gate and Peck's announcement that he had been robbed by the occupants of that car, renders Pittman's description of the suspects trustworthy. We believe that there was sufficient probable cause to arrest appellant.

■ There is no dispute that Trooper Brandlen's initial search of the trunk was conducted without a warrant. Warrantless searches are considered unreasonable per se, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Schraff v. State*, 544 P.2d 834, 838 (Alaska 1975); *Erickson v. State*, 507 P.2d 508, 514 (Alaska 1973). Appellant and the state debate the applicability of various recognized exceptions to the warrant requirement which may or may not validate Brandlen's

---

2. The items seized were two light brown jackets, a blue jacket, a gun, approximately $990 in a brown paper bag, and 4 baggies of marijuana.

3. Appellant reserved the right to appeal following his nolo contendere plea under *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974); *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978), which limits such appeals, does not apply retroactively, and would not have precluded this appeal in any case. The district attorney indicated that he would not have proceeded with the case without the evidence at issue.

4. The suspicious activity consisted of the Mercury occupants speaking to the occupants of an El Camino, putting something in the trunk of their car, and entering the store.

5. *Quoting from Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925); *McCoy v. State*, 491 P.2d 127, 129 (Alaska 1971). *See also Mattern v. State*, 500 P.2d 228, 232 (Alaska 1972); *Merrill v. State*, 423 P.2d 686, 699 n. 58 (Alaska 1967), *cert. denied*, 386 U.S. 1040, 87 S.Ct. 1497, 18 L.Ed.2d 607 (1967).

search. However, we do not need to address that issue because, even if we assume that the original trunk search was illegal, we hold that there was sufficient other probable cause to support the issuance of the subsequent warrant upon which authority the items in question were seized.

■■■ Assuming, arguendo, the unconstitutionality of the first trunk search, the exclusionary rule [6] would prohibit the use of both primary and derivative evidence gained from that search. Rule 26(g), Alaska R.Crim.P.; *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, derivative evidence is not "sacred and inaccessible". If it is gained from an independent source or has become "so attenuated as to dissipate the taint", it may be admissible. *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 311–312 (1939); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The test for finding whether derivative evidence must be suppressed along with the primary evidence yielded by the illegal search is:

> " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made had been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

*Wong Sun v. United States, supra*, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.[7]

■■■ We must determine whether the subsequent search warrant issued as a product of the prior allegedly illegal trunk search. Although the state has the ultimate burden of persuasion on the issue of whether the subsequently obtained evidence was untainted by the prior illegality, the

defendant has the initial burden of demonstrating by specific evidence that the evidence about which he complains grew out of the illegal search. *Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176, 192 (1969); *United States v. Paroutian*, 299 F.2d 486, 489 (2d Cir. 1962). Here, the causal connection between the illegal search and the subsequent warrant is tenuous. The controverted evidence here was obtained through information wholly independent of the initial trunk search.[8] The evidence presented to the district court in support of the search warrant was procured without resort to any clue or knowledge gained from the trunk search. The investigation leading to the lawful search was not intensified or significantly focused by reason of any tainted information. *See United States v. Schipani*, 414 F.2d 1262, 1266 (2d Cir. 1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970); *Standard Oil Company v. State of Iowa*, 408 F.2d 1171, 1177 (8th Cir. 1969).[9] Moreover, there was no exploitation of the alleged misconduct to discover new evidence as prohibited by *Wong Sun v. United States, supra*. The exclusionary rule extends only to those facts which were actually discovered through a direct process initiated by the unlawful act. Where the disputed evidence stems from an independent and lawful source, even though it could have emerged from the prior unlawful search as well, the evidence is admissible. Therefore, we hold that the trial court did not err in denying appellant's motion to suppress the results of the warrant search.

■■■ Although we hold that the second search was not tainted by the assumed illegality of the first intrusion, we believe it is

---

6. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

7. *Quoting from* Maguire, Evidence of Guilt, 221 (1959).

8. The affidavit recited information about the crime known to the officers when the Cruse vehicle was initially stopped and recounted the result of the subsequent photo identification of the suspects by Pittman and Peck.

9. *See generally, United States v. Bacall*, 443 F.2d 1050 (9th Cir. 1971) *cert. denied* 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971); Pitler, *"The Fruit of the Poisonous Tree" Revisited and Shepardized*, 56 Calif.L.Rev. 579 (1968); Comment, *Fruit of the Poisonous Tree—A Plea for Relevant Criteria*, 115 U.Pa.L.Rev. 1136 (1967).

necessary to address the investigator's failure to inform the district court that a search had already been conducted. Appellant argues that if prior police misconduct can be concealed from the court, and thereby protect evidence which might otherwise be inadmissible, there will be no deterrent against illegal searches. We agree that the concealment of relevant material from the judge issuing the warrant cannot be condoned. However, we cannot find that such concealment vitiated the validity of the warrant in this case.

 While there was sufficient independent probable cause presented to the district court to issue the search warrant, we must note that the constitutional protection against warrantless invasions of privacy[10] is endangered by the concealment of relevant facts from the district court issuing the warrant. Warrants issue *ex parte* and the issuing court must rely upon the trustworthiness of the affidavit before it. *See also State v. Davenport*, 510 P.2d 78, 82 (Alaska 1973). We believe the court must have all the pertinent facts before it in order to determine whether there is sufficient, properly obtained evidence providing probable cause for a warrant to issue. Police and prosecutors owe a duty of candor to the court,[11] particularly in light of the *ex parte* nature of these proceedings, and must not withhold information which may taint the source of the probable cause they put forth.

However, before we could hold that such concealment would invalidate the warrant, we must find that the information would have materially influenced the district court judge to issue a warrant he would have otherwise denied. Such analysis is analogous to the many cases where both tainted and untainted evidence has been presented to a magistrate in support of a warrant. In those cases, the reviewing court has excised the unlawfully gained evidence before passing on the validity of the warrant.

"[I]f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted."

*James v. United States*, 135 U.S.App.D.C. 314, 316, 418 F.2d 1150, 1152 (1969).[12]

It is logically possible, as urged by appellant, to extend the deterrence rationale for the exclusionary rule and argue that any illegality in the police conduct nullifies the entire investigatory process so that no warrant can issue. However, such an extension would in our view exceed the sound limits of the exclusionary rule and deterrence principle by excluding relevant and trustworthy evidence. *See James v. United States, supra*, 418 F.2d at 1152 n. 4; *Allen v. Cupp*, 426 F.2d 756, 759 (9th Cir. 1970); *People v. Stoner*, 65 Cal.2d 595, 55 Cal.Rptr. 897, 900–901, 422 P.2d 585, 588–589 (1967).[13]

---

10. U.S.Const. amend. IV; Alaska Const. art. 1, § 14.

11. *See generally*, ABA Standards Relating to Prosecution Function §§ 2.8(a) and 3.1(b) (Approved Draft 1971); *Roberts v. State*, 458 P.2d 340, 345 (Alaska 1969).

12. *Accord, United States v. Capra*, 501 F.2d 267, 280–81, n. 12 (2d Cir. 1974) *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975); *United States v. Falley*, 489 F.2d 33, 40–41 (2d Cir. 1973); *United States v. Koonce*, 485 F.2d 374, 379 (8th Cir. 1973); *Chin Kay v. United States*, 311 F.2d 317, 321 (9th Cir. 1962). *See also, State v. Davenport*, 510 P.2d 78, 82 n. 7 (Alaska 1973), in which a similar analysis is applied to the use of factual misstatements in an affidavit.

13. Nor does the second principle underlying the exclusionary rule, the imperative of judicial integrity, require a different result in this case. *See State v. Sears*, 553 P.2d 907, 912 (Alaska 1976). Although the courts should not be party to the use of the fruits of illegal conduct, we have held above that this evidence was not such a product. Furthermore, the initial trunk search which we have assumed illegal was not so egregious as to offend judicial integrity. Trooper Brandlen was beginning an inventory search of the Cruse automobile. Although we have not yet ruled on the validity of such searches under the Alaska Constitution, we note that inventory searches are permissible under the federal constitution. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Sergeant Hutchinson ordered the trunk closed when he arrived on the scene and decided to obtain a warrant.

Under this test, if the district court had known that Brandlen had opened the trunk, it would not have precluded a finding that sufficient probable cause existed to issue the search warrant.[14]

AFFIRMED.

RABINOWITZ, J., not participating.

BURKE, Justice, concurring.

I agree that the superior court did not err in denying appellant's motion to suppress, and that therefore his conviction should be affirmed. However, in reaching that conclusion I would apply the rule of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and hold that Trooper Brandlen's initial search of the automobile's trunk was lawful.[1] *See Daygee v. State*, 514 P.2d 1159, 1168–69 (Alaska 1973) (Fitzgerald, J., concurring).

MATTHEWS, Justice, concurring.

The majority opinion finds fault with the prosecutor and the police for omitting the information gained from the questioned search from the affidavit supporting the request for a warrant. At the same time the opinion relies on the omission as a demonstration that the warrant was based on untainted information. I agree that the warrant was not issued as a result of the arguably illegal search, but I am not prepared to criticize the prosecutor and the police for filing an affidavit which did not set forth the information which was gained in that search. That was done to eliminate any contention that the warrant was the

product of illegal conduct. This tactic has obviously succeeded and I see nothing wrong with it.

---

**14.** We do not express an opinion as to whether an omission demonstrably made with the deliberate intent to mislead the court would vitiate a warrant otherwise issued on sufficient facts. We also reserve opinion as to the effect of a deliberate false statement in an affidavit for a search warrant. *See State v. Davenport*, 510 P.2d 78, 82 n. 6 (Alaska 1973); *Franks v. State of Delaware*, —— U.S. ——, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Commonwealth v. Tucker*, 384 A.2d 938 (Pa.Super.1978). *Contra, State v. Rey*, 351 So.2d 489 (La.1977); *United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973).

**1.** In *Chambers v. Maroney*, under facts remarkably similar to those in this case, the Supreme Court of the United States held that the auto-

mobile "could have been searched on the spot," saying:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428. In this case I believe there was ample cause to arrest the occupants of the car and clear probable cause to believe that the automobile contained articles that the police were entitled to seize.