**Steven A. LANDERS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–3425.

Court of Appeals of Alaska.

April 19, 1991.

Walter Share and Robert D. Lewis, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

COATS, Judge.

Steven A. Landers was convicted, based upon his plea of no contest, of misconduct involving a controlled substance in the fourth degree, a class C felony. AS 11.71.-040(a)(3)(F). In entering his plea, Landers reserved his right to appeal a suppression issue under *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). Landers now appeals, arguing that the trial court erred in denying his motion to suppress. We affirm.

On July 17, 1989, Superior Court Judge Joan M. Katz conducted an evidentiary hearing to resolve Landers' motion to suppress. In reviewing a trial judge's decision on whether to suppress evidence, we review the record in the light most favorable to the prevailing party, in this case, the state. *Gray v. State*, 596 P.2d 1154, 1158 n. 18 (Alaska 1979).

Officer T.F. Taylor of the Anchorage Police Department testified at the evidentiary hearing. According to Taylor, his supervisor told him that he had received tips that someone was growing a substantial amount of marijuana at 1512 Nichols Street. Taylor testified that he drove by the residence several times. On one of the later times, he went to the house and knocked on the front door. When he received no response, Taylor went around to the side door and knocked. In walking around the residence, Taylor saw that one

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

of the electric meters was spinning more rapidly than the other one.

Taylor then contacted Officer Cathy Brewster. Both officers circled the house, and Taylor pointed out his observations to Brewster. The officers looked in windows, and, at one point, Taylor boosted Brewster up so that she could look through a window. The officers contacted neighbors on both sides of the house. The officers next contacted Assistant District Attorney Michael McLaughlin. McLaughlin told the officers that he believed that their actions in going around the house were improper, and that any evidence which the police obtained as a result would be inadmissible.

McLaughlin and the two officers then drove to the residence at 1512 Nichols. There they observed someone unloading Christmas presents from a pickup. According to Taylor and Brewster, they approached the young man, and introduced themselves as police officers. The young man identified himself as Stewart Bell. According to Taylor and Brewster, they asked Bell if they could step inside the house to discuss their investigation. Bell invited them in. The officers testified that when they entered the residence, the odor of growing marijuana was "overwhelming." According to the officers, Bell told them that all of the marijuana was downstairs. He stated that he had been downstairs and had seen the marijuana. He stated that he rented the upstairs; Landers retained control of the downstairs, and the marijuana was "Steve's thing."

The officers then went with McLaughlin and presented the information to a magistrate. The magistrate issued a warrant, finding probable cause to support a search warrant for the house. However, in issuing the warrant, the magistrate stated that he was not considering any of the observations which the officers had made through the windows from the exterior of the house. The magistrate issued the warrant based upon the testimony of the officers that they had smelled the marijuana after Bell had voluntarily admitted them into the residence, and based upon Bell's statements to the officers.

The police searched the house, and found marijuana plants in various stages of maturity. They seized the plants, and Landers was ultimately charged with possession of a controlled substance with intent to deliver or manufacture. Landers moved to suppress the evidence which the police obtained as a result of the search warrant. He contended that the officers' actions in touring the exterior of his house led to further investigation, which resulted in the officers contacting Bell. Landers also argued that Bell did not consent to the officers' entry into the house. Bell testified that the officers followed him into the house after he told them to wait outside.

Following the evidentiary hearing, Judge Katz found that Landers did not have standing to raise the issue of Bell's consent to allow the officers to enter the residence. She stated that she was accepting the state's testimony that Bell had consented to allow the officers in the residence, and was rejecting Bell's testimony to the contrary. She found that the officers had a substantial tip that there was a marijuana growing operation at the residence. She accepted the officers' testimony that, regardless of their observations when they walked around the residence, they would have continued to investigate the residence. She found that the police contact with Bell was not a consequence of the earlier illegal police investigation.

Landers contends that Judge Katz erred in finding that Bell consented to allow the police to enter the residence at 1512 Nichols Street. However, as we have previously stated, in reviewing the record on a suppression motion, we accept the evidence in the light most favorable to the prevailing party. The trial court's findings of fact on the consent issue will be reversed only if they are clearly erroneous. *Brown v. State*, 684 P.2d 874, 880 (Alaska App.1984). In the instant case, Judge Katz believed the testimony of the officers, as corroborated by McLaughlin, and rejected the testimony of Bell. The testimony of the officers was sufficient to establish that Bell consented to allow them to enter the residence. Our conclusion on this issue makes

it unnecessary for us to review Judge Katz' ruling that Landers had no standing to raise the issue of Bell's consent.

Landers next argues that Judge Katz erred in concluding that, assuming the police search of the exterior of Landers' residence was illegal, the illegality should not result in the suppression of the evidence which the police ultimately obtained after the illegal search. We believe that this issue is governed by *Cruse v. State,* 584 P.2d 1141 (Alaska 1978).

In *Cruse,* the police seized a car while arresting its occupants for robbery. A state trooper looked in the trunk of the car prior to having the car impounded. An Anchorage police officer observed evidence in the trunk when it was opened by the trooper. The officer closed the trunk until he could get a warrant. The officer testified before a magistrate as to all of the information which he had to establish probable cause for searching the trunk of the car. However, the officer did not tell the magistrate that he had seen inside the trunk until after the magistrate issued the warrant. *Id.* at 1143. The Alaska Supreme Court held that, assuming the original search of the trunk was illegal, the subsequent search warrant was not a product of the prior illegal search of the trunk. *Id.* at 1145. The supreme court pointed out that:

> The controverted evidence here was obtained through information wholly independent of the initial trunk search. The evidence presented to the district court in support of the search warrant was procured without resort to any clue or knowledge gained from the trunk search.

The investigation leading to the lawful search was not intensified or significantly focused by reason of any tainted information. Moreover, there was no exploitation of the alleged misconduct to discover new evidence as prohibited by *Wong Sun v. United States, supra* [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)]. The exclusionary rule extends only to those facts which were actually discovered through a direct process initiated by the unlawful act. Where the disputed evidence stems from an independent and lawful source, even though it could have emerged from the prior unlawful search as well, the evidence is admissible.

*Id.* at 1145 (citations and footnotes omitted).[1] *See also Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988);[2] *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

On this record, we believe that Judge Katz could properly conclude that the search warrant was not a product of any prior illegal police activity. There was evidence that the police had made a significant effort to investigate a tip of a marijuana growing operation at 1512 Nichols Street before any illegal police activity. The police had made several attempts to locate people at that residence. Judge Katz could properly conclude that the police decision to return to the residence, which resulted in their contact with Bell, was not a product of any prior illegal search. Once we accept Judge Katz' ruling that Bell consented to allow the police into

---

1. The supreme court disapproved of the police officer withholding the information that he had looked in the trunk. The court concluded that "[p]olice and prosecutors owe a duty of candor to the court, particularly in light of the *ex parte* nature of these proceedings, and must not withhold information which may taint the source of the probable cause they put forth." *Cruse,* 584 P.2d at 1146 (footnote omitted). The officers in this case followed the procedure which the court approved of in *Cruse.*

2. In *Murray,* the court stated:
   The ultimate question, therefore, is whether the search pursuant to a warrant was in fact a

genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the magistrate and affected his decision to issue the warrant.

487 U.S. at 542, 108 S.Ct. at 542 (footnote omitted). The court concluded that where the government could show that the police decision to conduct a search did not result from illegally obtained evidence, the evidence which the police obtained in the search was admissible.

the residence, the police had sufficient information to obtain a warrant based upon their testimony that they smelled an overpowering odor of growing marijuana when they entered the residence, and based upon the statements which the police testified that Bell made to them. The magistrate specifically did not rely on the allegedly illegal police activities in issuing the warrant. We accordingly find no error.[3]

The conviction is AFFIRMED.

---

**3.** Landers contends that the state omitted critical facts in presenting their application to the magistrate for the warrant to search Landers' house. However, Judge Katz did not make any findings on this issue, apparently because Landers did not raise this issue in the court below. We accordingly decline to review this issue on appeal. *Moreau v. State,* 588 P.2d 275, 279–80 (Alaska 1978).