John MEYERS, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. A–4131.

Court of Appeals of Alaska.

Sept. 25, 1992.

S. Joseph Montague, Gorton & Oberly, Anchorage, for appellant.

Tracy Gellert, Asst. Mun. Prosecutor, and Richard L. McVeigh, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

John Meyers was convicted, following a jury trial in the Anchorage district court, of driving while intoxicated under Anchorage Municipal Code 9.28.020(A). He appeals the district court's denial of his motion to suppress evidence of his blood alcohol level. We affirm.

On the evening of March 9, 1990, Anchorage Police Officer Dan R. Seely responded to a three-vehicle accident at the corner of 15th Avenue and Gambell Street. According to witnesses, Meyers had driven his car through a red light, causing the accident. A passenger in Meyers's vehicle told Officer Seely that Meyers had been drinking.

Meyers was injured in the accident, and he was taken to Humana Hospital for treatment. After completing his investigation at the scene of the accident, Seely went to the hospital. At the hospital, both paramedics and the physician who first saw Meyers told Seely that Meyers was visibly intoxicated. When Seely interviewed Meyers, his observations corroborated those of the medical personnel: Seely found Meyers to have bloodshot eyes, slurred speech, and a strong odor of alcoholic beverages. Meyers in fact admitted to Seely that he had consumed four drinks before he began driving.

Seely obtained Meyers's consent to police inspection of his hospital treatment records. These records included the results of a blood test that had been conducted by hospital personnel for medical purposes.

The test showed that Meyers's blood alcohol level was .212 percent.

After Meyers was charged with driving while intoxicated, he moved to suppress the blood test results, claiming that he had been too disoriented to give a meaningful consent to the police inspection of his hospital records. District Court Judge William H. Fuld agreed that Meyers's consent had been invalid and he therefore suppressed the test results. However, Judge Fuld further ruled that, because the blood test had been conducted for medical reasons (not at the behest of the police), the test results remained available to the police by search warrant—if the police could obtain the warrant through an application that made no reference to the illegally obtained test results.

Pursuant to Judge Fuld's decision, the Municipality of Anchorage applied to Magistrate Brian Johnson for a search warrant to obtain the blood test results from the hospital file. The search warrant application was based on Officer Seely's investigation of the case up to the time he obtained Meyers's consent to inspect the hospital records. Magistrate Johnson issued the warrant.

Meyers then filed a second motion to suppress the blood test results. Meyers conceded that the search warrant application established probable cause for the search, but he argued that the police applied for the warrant only because they already knew the test results. Judge Fuld rejected Meyers's argument. Based upon the testimony of Officer Seely and of Assistant Municipal Attorney James Wolf, Judge Fuld concluded that the authorities' knowledge of the blood test results had not altered or augmented their motivation to seek a search warrant for Meyers's hospital records. Judge Fuld found that, under the facts of Meyers's case, the officer investigating the accident had every reason to believe that the blood test results would be over .10 percent, even before the officer obtained Meyers's consent to view the test results. Judge Fuld also found that, under the Municipality's standard operating procedure in DWI cases, the police normally would apply for a search warrant to obtain the driver's hospital blood test results without seeking the driver's consent.

■ On appeal, Meyers cites decisions from other states in which courts, facing similar fact situations (an initial invalid search or seizure followed by a subsequent valid one), have suppressed evidence despite the fact that the police's subsequent, legal efforts to obtain the same evidence were not tainted by the initial illegality. These courts have reasoned that the policy of deterring police misconduct calls for application of the exclusionary rule even when the initial illegality cannot be shown to taint the police's subsequent acquisition of the evidence.

However, Alaska law on this issue is defined by *Cruse v. State*, 584 P.2d 1141 (Alaska 1978). In *Cruse*, the police had conducted an arguably illegal search of the trunk of the defendant's vehicle. Recognizing that there might be a problem with this initial search, the authorities obtained a search warrant authorizing them to conduct the same search. The search warrant application did not contain any information obtained as a result of the original search of the trunk. 584 P.2d at 1143.

The Alaska Supreme Court decided that it did not need to resolve the legality of the initial search. Rather, the court held that the evidence ultimately seized from the trunk was not tainted by any initial illegality, since the police had seized the evidence pursuant to a subsequently issued search warrant that did not rest in any way on the results of the first search. *Id.* at 1145.

■ Meyers contends that the *Cruse* test needs to be supplemented. He argues that it is not sufficient for the government to show that a warrant could be obtained without reference to the illegally seized evidence. Rather, Meyers asserts, even if the search warrant application makes no mention of the illegally obtained evidence, the initial illegality nevertheless taints the subsequent warrant if the illegally obtained evidence increased the police's motivation to seek that warrant.

We agree with Meyers that this is the test. However, the *Cruse* decision incorporates this very rule. After stating that "the controverted evidence here was obtained through information wholly independent of the initial trunk search", the court then clarified what it meant by "wholly independent":

> The evidence presented to the district court in support of the search warrant was procured without resort to any clue or knowledge gained from the trunk search. *The investigation leading to the lawful search was not intensified or significantly focused by reason of any tainted information.* Moreover, there was no exploitation of the alleged misconduct to discover new evidence....

*Cruse*, 584 P.2d at 1145 (emphasis added).

Thus, the Alaska Supreme Court's decision in *Cruse* already incorporates Meyer's "tainted motivation" theory. Judge Fuld found that the authorities' motivation to seek the search warrant for Meyers's hospital records would have existed, undiminished, if the police had never seen the blood test results. This finding of fact is not clearly erroneous. *Wilburn v. State*, 816 P.2d 907, 911 (Alaska App.1991).[1]

Our conclusion disposes of Meyers's argument that Alaska Evidence Rule 412 prohibits use of the blood test results. Rule 412 states that illegally obtained evidence shall not be used for any purpose if the defendant in a criminal prosecution makes a proper objection. However, the blood test results seized pursuant to the search warrant were legally obtained.

The judgement of the district court is AFFIRMED.

---

1. *Cruse* requires the police, when seeking a search warrant, to inform the court that an illegal or arguably illegal search has already occurred. 584 P.2d at 1146. (But see Justice Matthews's concurring opinion, 584 P.2d at 1147.) In the present case, the police did not tell Magistrate Johnson that they had already obtained the blood test results illegally. However, when the police withheld this information from Magistrate Johnson, they were following the directive given them by Judge Fuld. All the relevant facts are contained in the court record. There was no attempt to mislead the judiciary.