**Tyrone DAVENPORT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1680.**

Supreme Court of Alaska.

Nov. 2, 1973.

Lawrence J. Kulik, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Daniel W. Hickey, Asst. Atty. Gen., John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

Tyrone Davenport appeals from the judgment and commitment of the superior court, entered pursuant to a jury verdict, finding him guilty of assault with a dangerous weapon, a violation of AS 11.15.-220, and possession of a concealable firearm by a felon, a violation of AS 11.55.-030. He argues that the trial court erred (1) in failing to invalidate a search warrant which, he alleges, was based upon an inaccurate or insufficient affidavit, and (2) in admitting evidence that the assault weapon was stolen property, and admitting into evidence a stolen television set.

At 7:00 a. m. on September 22, 1971, Calvin Volcy made a statement to the Anchorage Police Department that he had been shot at by someone he *thought* to be Tyrone Davenport. Three police officers went to Davenport's father's apartment to arrest Tyrone Davenport. While Officers Olson and Jones were arresting Davenport, Officer Simpson approached the apartment from a rear alley and was stopped by a neighbor, Andrew Nelson, who related the following story. Nelson had heard someone rushing back and forth during the early morning hours. He got up to investigate, and saw someone rush out of the Davenport apartment and toward a storage shed (out of Nelson's line of vision). Nelson heard a door open, which he assumed was the door to the shed. The man rushed back into the Davenport apartment. Immediately thereafter the police arrived.

Officer Simpson obtained permission from the owner to search the shed, where the officers found two firearms, one .380 Mauser and one .22 pistol with two empty and seven unfired cartridges. The .22

smelled of burned gunpowder. The officers took both guns into custody.

On the same day, Officer Gray obtained a warrant to search the Davenport apartment for stolen handguns based upon an affidavit containing the following statements:

"That [Gray] has reasons to believe that on the premises known as 512 E. 12th Avenue, Apt. #9, Anchorage, Alaska, which is a green-colored wooden frame residence located on the east side of Eagle Street between E. 12th and E. 13th Avenues, and commonly occupied by James Davenport and his sons Jimmie and Tyrone Davenport; there is now being concealed certain property, namely eight handguns, the property of Howard's Gun Shop, which is evidence of the crime of burglary;

"That the facts establishing his belief in the foregoing and grounds for issuance of a search warrant are as follows:

"[1] That on September 5, 1971 Howard's Gun Shop was broken into and burglarized;

"[2] That this burglary was reported on the 7th day of September, 1971;

"[3] That taken in the burglary were a minimum of fifteen handguns, among them a Mauser 380 automatic, serial no. 019501;

"[4] That on the 22nd day of September, 1971, subsequent to a shooting incident, Tyrone Davenport was observed by a neighbor, Andrew Nelson, 512 E. 12th Ave., Apt. #3, entering a storage area in the apartment complex at 512 E. 12th Avenue, remain a moment and then hurriedly left the storage area and entered his apartment;

"[5] That a search of the storage area revealed two guns in said storage area; one, being a .22 caliber pistol, allegedly used by Tyrone Davenport in the shooting incident and the other being a 380 Mauser, serial no. 019501, which was reported being among the stolen guns from

Howard's Gun Shop on the 5th day of September, 1971 burglary;

"[6] That following Tyrone Davenport's arrest on September 22, 1971 for the shooting incident, he was transported to the State Jail;

"[7] That later in the afternoon of September 22, 1971, your affiant was approached by inmate, Matthew Harris and it was related to your affiant that he, Matthew Harris, had been in the Tyrone Davenport residence at 512 E. 12th Avenue, Apt. #9, approximately on the 16th day of September, 1971 and while there saw eight or nine handguns, which Davenport stated came from Howard's Gun Shop."

In searching the Davenport apartment, the officers did not find any guns, but they saw a color television set and noted the serial number which, as they later learned, corresponded to the serial number of a television set stolen from the owner of the .22 revolver, one Robert Mitchell. Subsequently the officers legally retrieved the television set.

Davenport moved to suppress the television set as evidence. He argued that: the television set was first observed and its serial number noted during the search incident to the September 22 search warrant; the September 22 search warrant was invalid because it was based on an affidavit containing inaccurate statements of facts or insufficient facts; therefore, the television set should not be admitted into evidence. In denying the motion, the court noted that there were two or three types of inaccurate information in the affidavit, and that one of the statements was taken from an unreliable informant, Harris. Nevertheless, looking at the affidavit as a whole and combining Harris' statement and the officers' finding the .380 Mauser in the storage area, one could reasonably

conclude that the remaining stolen guns would be found in the Davenport apartment. Therefore, he ruled, the search warrant was properly issued.

At trial, the state sought to prove Davenport's possession of the .22 pistol. Since there were no fingerprints identifiable as Davenport's on the .22,[1] which Davenport allegedly used to shoot at Volcy, the state sought to introduce into evidence (1) the color television set, on the theory that the television set and .22 having been stolen from the same source, possession of one would tend to show possession of the other; and (2) the Mauser .380, on the theory that Davenport's fingerprints having been found on the Mauser,[2] and both guns having been taken from the same cache, possession of one would tend to show possession of the other. Davenport objected to the admission of that evidence on the grounds of relevancy and prejudice. Nevertheless, the court admitted the evidence for the limited purpose of identifying Davenport as the perpetrator of the alleged assault.

To show Davenport's possession of the television set, the state brought forth Bernice Floyd, who testified that she saw Davenport carry into his residence a television set similar to the one in evidence.

Robert Mitchell testified that the television set and .22 revolver were both stolen from his residence. He admitted that he reported the loss of the items at different times, but this was because he did not discover that the gun was missing until after he had reported the theft of the television set. The state made no showing that the television set and the .22 were taken during the same burglary.

I

Appellant challenges the search warrant on three fronts: (1) the affidavit con-

---

1. An identification specialist for the Anchorage Police Department, Mr. Thomas Morris, testified that there was no total fingerprint on the .22, but there was a clear partial fingerprint on the trigger that could not be identified with Davenport's fingerprints.

2. Morris testified that he did identify Davenport's fingerprints on the Mauser .380, and that the two guns were not confused.

tained material misstatements of fact; (2) the affidavit failed to describe the reliability and credibility of the informer for statement number [7]; and (3) stripped of those misstatements and the statement of the informer, the affidavit was insufficient to support a search warrant.

■ In our opinion, there was no need for the affidavit to have established the informant's reliability and credibility inasmuch as there was a substantial basis for crediting the informant's story.[3] Furthermore, even after excising from the affidavit all of the alleged misstatements, we are satisfied that the affidavit was sufficient to support the search warrant.

■ These very issues we have recently treated at length in State v. Davenport, 510 P.2d 78, 81–83 (Alaska 1973). Briefly to recapitulate our previous discussion, the affidavit averred that the informant Harris' personal and recent observations were the sources of his information. Furthermore, Harris' story was corroborated in the affidavit by the discovery, in connection with Davenport's arrest, of a handgun stolen from Howard's Gun Shop. In short, the informant's story satisfied the "substantial basis" test set out in Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and therefore the affidavit was not deficient for failing particularly to describe his reliability and credibility.

■ As to the misstatements, appellant argues (1) that Nelson, the neighbor, did not know it was Davenport whom he saw enter the storage area and then hurriedly repair to the Davenport apartment; (2) that the affidavit does not state *who* alleged that Davenport had fired the .22 pistol; and (3) that Gray contacted Harris rather than vice versa. Excluding these statements from consideration, the residue of the affidavit asserts that (1) Harris saw eight or nine handguns in the Davenport residence; (2) Davenport informed Harris that they had been taken from Howard's Gun Shop; (3) one of these stolen handguns was found in the storage area following the shooting incident which led to Davenport's arrest; and (4) shortly after the shooting incident, someone entered the storage area where the gun was found and then hastened into the Davenport residence.

■ We think these allegations were sufficient to establish probable cause for the issuance of a search warrant. We are not satisfied that the district judge was so influenced by the misstatements as to issue a search warrant which should have been denied. To reiterate our holding in State v. Davenport, 510 P.2d at 82, only where a misstatement of fact in an affidavit is material to the showing of probable cause upon which the search warrant is based—i. e., where probable cause would not be made out but for the misstatement—will that misstatement fatally impair the validity of the warrant.

II

Appellant contends that the trial court committed reversible error in permitting the state to introduce the color television set into evidence, because the evidence was irrelevant, and because the prejudicial effect of that evidence outweighed its probative value. The state responds that the introduction of the television set was relevant to show defendant's possession of the .22 pistol, the gun allegedly used by Davenport in the shooting for which he is charged. The trial court admitted the evidence for the limited purpose of identifying Davenport as the perpetrator of the alleged assault.

In assessing the relevance of the color television set, we must consider it in the context of the other evidence that was introduced at trial. The shooting which was the crux of the assault with a dangerous weapon charge occurred on September 22, 1971, at about 7:00 a. m. Mitchell noticed that the color television set had been stolen from his residence on September 21, 1971,

3. Erickson v. State, 507 P.2d 508, 517 (Alaska 1972).

the day immediately preceding the shooting incident. Also on September 21, 1971, Bernice Floyd observed Davenport carry into his apartment a television set which was later identified as the set stolen from Mitchell. At about the time of the shooting, the witness Nelson observed a single figure rush from Davenport's apartment to the storage shed and back. Finally, the search of the storage shed uncovered two guns, one of which contained appellant's fingerprint on its trigger.

 As an isolated strand, the color television set may be said to have minimal probative impact on the question of Davenport's possession of the .22 pistol. Clearly it is but circumstantial evidence on that issue. Yet as we said in Jordan v. State, 481 P.2d 383, 387 (Alaska 1971),

> "[Circumstantial] evidence can produce a configuration of proof so interrelated that the whole acquires convincing properties not derivable from a mere summation of each atomistic part."

In the everyday affairs of life, burglaries are relatively uncommon occurrences. Thus it is improbable that the Mitchell residence had been subjected to multiple burglaries, especially within a 24-hour period. A person whose residence has been burglarized may not discover the totality of his loss for a substantial period of time. Yet when one article of stolen property—in the instant case, the .22 pistol—is found a considerable distance from the residence of its true owner within 24 hours of a burglary, the ordinary experience of life dictates the conclusion that the pistol was taken during the burglary.

 When a burglary has been committed, either by one or several persons, it does not necessarily follow that the stolen property is immediately divided and distributed or "fenced" as individual pieces. Articles of stolen property may be held in bulk until they "cool down". Hence possession of one article of stolen property within 24 hours of the burglary in which that property was stolen—in the instant case, the color television set—makes more

probable possession of another article stolen at the same time and place. When we consider as well the sighting of a single person in the area of the shooting and the finding of another gun bearing Davenport's fingerprint beside the weapon allegedly used in the shooting we must conclude that the color television set added significantly to the emerging configuration of proof and was indeed relevant.

 Appellant's fallback position is that even if the color television set constituted relevant evidence, the prejudicial impact of its showing him in possession of stolen property outweighed its probative value. We think this issue is governed by our disposition of the prejudicial impact issue in Howard v. State, 496 P.2d 657, 661–662 (Alaska 1972). In that case we upheld the admission into evidence of testimony by a witness that he had made over 100 buys of a substance he believed to be heroin from the defendant. We held the prejudicial impact of this evidence did not outweigh its probative value inasmuch as the jury already had before it evidence that the witness had made previous buys of what he believed to be heroin from the defendant. The only additional fact which the challenged testimony placed before the jury was the number of transactions between the witness and the defendant.

In the case at bar, the appearance of Davenport's fingerprint on the Mauser .380 stolen from Howard's Gun Shop indicated to the jury that appellant had previously possessed stolen property. Thus, as in *Howard*, the challenged testimony merely placed before the jury evidence of appellant's possession of additional articles of stolen property. Furthermore, at the time the television set was introduced into evidence, the trial judge instructed the jury that the set and its accompanying testimony were introduced,

> " . . . for the limited purpose of establishing, if you believe the testimony, the identity of Mr. Davenport as the perpetrator of the alleged assault and the fact or circumstances surrounding the

taking of these items are not properly matters that you should consider or hold against this defendant in any respect at all. . . . "

In these circumstances, we think that whatever prejudicial impact this evidence might have had did not outweigh its probative value.

Affirmed.