**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ted Allen WILLIS, John Pat Rabb, Donald Andrew Bartlett, and Bruce Hal Chappell, Defendants–Appellants.**

**Nos. 79–1994 to 79–1997.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 16, 1980.

Decided Oct. 24, 1980.

Certiorari Denied Jan. 26, 1981.
See 101 S.Ct. 950.

Mark F. Green, Asst. U. S. Atty., Muskogee, Okl. (Julian K. Fite, U. S. Atty., and Betty Outhier Williams, Asst. U. S. Atty., Muskogee, Okl., with him on brief), for plaintiff–appellee.

J. Terry Wiggins of J. Terry Wiggins, P. C., Denver, Colo., for defendants–appellants.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

Ted Willis, John Rabb, and Donald Bartlett were convicted by a jury of unlawfully manufacturing methamphetamine, and possessing methamphetamine with an intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). Bruce Chappell was convicted by the same jury of unlawfully possessing methamphetamine with an intent to distribute it, also in violation of 21 U.S.C. § 841(a)(1). All four defendants appeal their respective convictions. The only ground urged for reversal concerns the sufficiency of an affidavit which was the basis for the issuance of a search warrant.

Ronald Hignight, a special agent with the Drug Enforcement Administration, filed an affidavit for a search warrant with a state district court judge in Wagoner County, Oklahoma. Hignight sought the issuance of a warrant which would authorize the search of a described house located outside of Broken Arrow, situate in Wagoner County, Oklahoma. The averments in the affidavit are summarized as follows: (1) an unnamed confidential informant, who had provided reliable and truthful information on more than two occasions, stated that Ted Willis, John Rabb, and others, were presently manufacturing amphetamine on the subject premises; (2) the affiant, Hignight, had personal knowledge that both Willis and Rabb had "criminal reputations and records" relating to the manufacture and distribution of amphetamine; (3) based on the informant's statement that Willis and Rabb were "currently" manufacturing amphetamine, the affiant proceeded to make an immediate "surreptitious surveillance" of the subject premises and that while so doing he detected the odor of ether; and (5) based on his seven and one–half years as a drug enforcement agent, Hignight knew that ether is a necessary precursor in the manufacturing of amphetamine.

Based on Hignight's affidavit, the state judge issued a warrant authorizing a search of the described premises. The warrant was executed forthwith. The four defendants were found in the house and arrested. A search of the house disclosed various chemicals, flasks, vacuum pumps, tubing, laboratory glassware, and methamphetamine. These items were seized and later introduced in evidence at the trial of the case.

Prior to trial, defense counsel filed a motion to suppress the introduction into evidence of the items seized in the search of the house in which Willis and Rabb resided, contending that Hignight's affidavit did not establish such probable cause as would justify the issuance of the search warrant. The trial court denied the motion. Under the circumstances, we agree with the trial court and therefore affirm.

In *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964) the Supreme Court laid down a so–called two prong test to be used in evaluating an affidavit seeking the issuance of a search warrant. Recognizing that an affidavit may be based on hearsay, the Supreme Court in *Aguilar* held that the issuing magistrate must be informed of at least some of the underlying circumstances from which the informant concluded that illegal activity was being conducted on the premises sought to be searched, and the basis for the affiant's belief that the informant was himself credible or his information reliable. Such was deemed essential in order that the issuing magistrate could perform his "neutral and detached" function, and not serve simply as a rubber stamp for the police. In

*Aguilar*, the affidavit merely stated that the affiants had received reliable information from a credible person, without reciting any of the "underlying circumstances" which would enable the issuing magistrate to make an independent judgment on the ultimate question whether there was such probable cause as would justify the issuance of a search warrant.

In *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968) the Supreme Court found that the informant's report as set forth in the affidavit did not meet the *Aguilar* standards. In such circumstance the Supreme Court authorized a consideration of other averments in the affidavit which might themselves tend to corroborate the information contained in the informant's hearsay report. The affidavit, to be considered in its entirety, was, however, still to be measured against the *Aguilar* standard. In *Spinelli*, the Supreme Court found that the informant's tip, even though corroborated, in part, by government agents, still did not pass the *Aguilar* standard. In this regard the Supreme Court noted that allegations in the affidavit concerning the corroboration by the police of the informant's report contained no suggestion of criminal conduct when taken by themselves.

 Applying the rule of *Aguilar* to the affidavit involved in the present case, we conclude that the reference in Hignight's affidavit to the informant's reliability and credibility does not meet the *Aguilar* test. Under *Spinelli*, we then look to the other allegations in the affidavit in order to determine whether the affidavit, viewed in its totality, nonetheless enabled the issuing judge to make an independent judgment as to whether probable cause existed. Our study of the affidavit here under consideration leads us to conclude that it does meet the applicable standards, and that in finding probable cause the issuing state judge acted properly.

In his affidavit, Agent Hignight stated that a confidential informant had advised him that amphetamine was being manufactured at the described premises on January 22, 1979, and that Willis and Rabb were residing therein. Agent Hignight also stated that he knew that both Willis and Rabb had "criminal reputations and records" for making and distributing amphetamine. It would appear that such fact could properly be considered by the issuing judge. See *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971) and *United States v. Canestri*, 518 F.2d 269 (2nd Cir. 1975). Additionally, and most importantly in our view, we learn from the affidavit that Agent Hignight proceeded immediately to the premises identified by the informant as the place where amphetamine was being manufactured, and while conducting a "surreptitious surveillance" of the premises he detected the odor of ether. Agent Hignight further stated in the affidavit that, based on his personal experiences for some seven and one–half years as a drug agent, he knew that ether was a necessary precursor in the manufacture of amphetamine. In our view, the present affidavit, viewed in its interrelated entirety, adds up to probable cause, and thereby satisfies the tests enunciated in *Aguilar*, *Spinelli*, and *Harris*. We reject the suggestion that Hignight's affidavit fails, on its face, to establish the probable cause needed for the issuance of the warrant.

In our view the present case is quite different from *United States v. Larkin*, 510 F.2d 13 (9th Cir. 1974), relied on by counsel. The "corroboration" made by Agent Hignight is much stronger than the "corroboration" found in *Larkin*. The instant case is much more akin to *United States v. Callaghan*, 445 F.Supp. 1296 (D.N.J.1978), affirmed without opinion at 582 F.2d 1277 (3rd Cir. 1978). In that case the district judge found that the affidavit there involved, when viewed in its entirety, met the standards of *Aguilar*, *Spinelli*, and *Harris*. In *Callaghan*, as in the instant case, the drug agent checked out the informant's tip that drugs were being manufactured at a particular place by going to the subject premises, before asking for a search warrant. And, as here, the agent in *Callaghan* stated that his on–the–scene inspection re-

vealed the smell of ether and that, based on experience gained from previous drug investigations, the drug manufacturing process there involved was usually accompanied by a strong smell of ether.

Judgment affirmed.