**STATE of Alaska, Petitioner and Cross-Respondent,**

v.

**Richard WITWER, Respondent and Cross-Petitioner.**

**Nos. 5982, 6010.**

Court of Appeals of Alaska.

April 8, 1982.

---

George W. Edwards, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for petitioner and cross-respondent.

Patrick J. McKay, Pestinger & McKay, Anchorage, for respondent and cross-petitioner.

## OPINION

Before BRYNER, C. J., COATS and SINGLETON, JJ.

SINGLETON, Judge.

The state has petitioned for review of a decision of the superior court quashing a search warrant and suppressing evidence obtained through its use.[1] We grant the

---

1. The state originally obtained an indictment against defendant on the same charges based on the same facts in *State v. Witwer*, 3AN 80-6037 Cr. At an omnibus hearing before Judge Buckalew, the same motion to suppress was denied but a motion to quash the indictment was granted. Witwer was re-indicted and he renewed his motion to suppress before

petition, reverse in part, and remand for further proceedings.

The relevant facts must be gleaned from the affidavit itself, since no oral testimony was taken by the magistrate. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Nevertheless, we set out the background facts in order to establish the context in which the warrant was issued.

Gary Watkins, while working as a police informant, made the acquaintance of Brenda Flint and he thereafter persuaded her to sell him cocaine on a number of occasions. Without Flint's knowledge, Watkins arranged for police surveillance under, what law enforcement officers call, a "controlled buy." Prior to meeting Flint on November 17, Watkins was strip-searched by police officer Mark O'Brien to ensure that he had no contraband on his person and was given $300 in marked bills to make the purchase, and he was transported to a location near Flint's residence. While O'Brien watched, Watkins entered Flint's residence. He emerged shortly thereafter with Flint, entered her vehicle, and drove with her to the corner of 31st Avenue and Spenard Road in Anchorage where Watkins got out and remained while Flint drove away. Several minutes later Flint returned, picked up Watkins, and drove him to her residence which they both entered. Watkins emerged a few minutes later and gave O'Brien a quantity of what tested out as cocaine. The same sequence of events transpired two days later on November 19, 1980, except $400 in marked money was used for the buy.

During these events, O'Brien kept Watkins under continuous surveillance except while he was in Flint's residence. Other officers, working in conjunction with O'Brien, kept Flint under surveillance during the short period elapsing between her dropping Watkins at the corner of 31st Avenue and Spenard Road and her returning to pick him up. On both occasions they observed her drive to a residence located at 1408 W. 31st Avenue, enter, and almost immediately leave and re-enter her vehicle and return for Watkins. Defendant Witwer resides at that address.

In reliance on these observations as well as additional information from other investigations identifying Witwer as a dealer in cocaine, Officer O'Brien decided to seek a search warrant for Witwer's residence, 1408 W. 31st Avenue, and he swore out the affidavit upon which the motion to suppress depended. The affidavit is brief and is set out below.[2]

Judge Moody who granted it. The record does not reflect that new evidence was introduced or new arguments were made. Nevertheless, the state does not argue that Judge Buckalew's ruling bound Judge Moody under either the doctrine of collateral estoppel or the law of the case. We therefore do not reach that issue except to note that we reserved a similar issue in *State v. Kott,* 636 P.2d 622, 626 n.3 (Alaska App. 1981). *See* 3 W. LaFave, Search and Seizure § 11.2(f), at 524 (1978); C. Wright, Federal Practice and Procedure § 676, at 130 (1969); *cf. Stepanov v. Gavrilovich,* 594 P.2d 30, 36 (Alaska 1979) (effect of earlier ruling by different judge on a later decision under law of the case doctrine). *Compare Commonwealth v. Scala,* 8 Mass.App. 202, 392 N.E.2d 869 (1979), *aff'd,* 380 Mass. 500, 404 N.E.2d 83 (1980) (decision at an earlier suppression hearing not binding at subsequent hearing) *with State v. Gonzales,* 75 N.J. 181, 380 A.2d 1128 (1977) (decision binding).

2.   AFFIDAVIT

I, Mark O'Brien, being first duly sworn, depose and says [sic]:

1. I am a police officer with Anchorage Police Department assigned to the Metropolitan Drug Enforcement Unit.

2. On November 17 and November 19, 1980 controlled drug buys were made through an informant with Brenda L. Flint.

3. On both occasions cocaine was purchased using money the serial numbers of which had been recorded before the sale; a list of numbers is attached.

4. On both occasions Flint went to 1408 W. 31st Ave. and was observed by Metro officers to enter and exit only that residence and then return with cocaine.

5. Arrangements have been made with Flint to purchase approximately ¼ ounce of cocaine on 11/20/80.

6. It is believed that Flint will again go to 1408 W. 31st Avenue to obtain the cocaine, using money the serial numbers of which have been recorded, list attached.

The search warrant which issued was conditioned on a repetition of Flint's prior conduct. Specifically, the warrant provided:

The officer may serve this warrant at such time as he and/or other officers observe a sale of cocaine by Brenda Flint during which sale she enters the residence described herein on this date.

The warrant specifically permitted, subject to the qualification just stated, service at any time of the day or night.

On November 20, Flint met Watkins by prearrangement and the same sequence of events occurred. Flint again entered the residence at 1408 W. 31st Avenue after dropping Watkins off and then, according to pattern, returned in her vehicle to pick him up. She was then arrested. Subsequently, the warrant was served resulting in the seizure of the evidence which was ultimately suppressed. The trial court found O'Brien's affidavit defective in that:

(1) The court finds that the search warrant issued in this case was not based upon probable cause.

(2) The basis for the above finding is that there was insufficient 'control' over the person of Brenda Flint to support a probable cause finding that the cocaine subsequently sold to the police informant by Flint came from the residence of the defendant. While the memoranda and arguments of counsel indicate that Brenda Flint was the source of the cocaine sold to the police informant, there was no showing that the police had such 'control' over the person of Flint in determining her source of cocaine. Flint could have had the cocaine in her possession at the beginning of the transaction, in her vehicle, in her residence, or the cocaine could have been in the residence of the defendant. These are all possibilities, and that is the precise issue. The police failed to demonstrate that Flint's probable source of cocaine was the defendant's residence.

■ The test of probable cause has been articulated in a number of Alaska cases. For example, in *Harrelson v. State*, 516 P.2d 390, 396 (Alaska 1973), the court said, "Probable cause is made out when reliable information is set forth in sufficient detail to warrant a reasonably prudent man in believing that a criminal offense has been or was being committed." Citing *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040, 1050 (1967). Where, as here, the place to be searched is not the place at which the criminal activity was or is to be consummated, it is also necessary to have probable cause to believe, (1) that items which are the objects of the search are seizable by virtue of their connection with criminal activity, and (2) that the items will be found in the place to be searched. *See State v. Doe*, 371 A.2d 167 (N.H.1975); 1 W. LaFave, *Search and Seizure* § 3.1, at 442, § 3.2, at 487–90, and § 3.7(d), at 704–16, especially 706–08 (1978); *Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment*, 28 U.Chi.L.Rev. 664, 687 (1961).

■ Finally, the review to determine whether probable cause exists must be limited to the record made before the magistrate including the affidavit(s) submitted and any oral testimony presented under oath to the magistrate prior to issuance of

---

7. Past investigations revealed that Richard J. Witwer lives at 1408 W. 31st Ave., Anchorage.

8. Past investigations revealed that Witwer is known on the street as "Dirty Dick" and to metro as "Dilaudid Dick."

9. Intelligence information and past investigation reveals that Richard Witwer is involved in drug trafficking in the Anchorage area.

10. Accordingly, I wish to search the residence at 1408 W. 31st Avenue if in fact a controlled buy of cocaine occurrs [sic] and Brenda L. Flint goes to 1408 W. 31st Avenue to obtain the cocaine.

11. Based on my experience working for the Metropolitan Drug Enforcement Unit, I believe that one who sells cocaine and other illicit drugs, also possesses packaging materials to include scales, baggies and records of sales including amounts owned by and the names of purchasers.

12. Accordingly I also wish to search for cocaine packaging materials and records of sales.

13. The residence at 1408 W. 31st Avenue is a beige with dark trim, wood frame, single-story, single-family dwelling that faces north on the south side of W. 31st Avenue.

the warrant. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Keller v. State*, 543 P.2d 1211, 1215 (Alaska 1975).

Applying these tests to the facts set out in Officer O'Brien's affidavit, and considering only the information within the four corners of the affidavit, we conclude that there was substantial evidence from which the magistrate could find that the objects of the search, i.e., marked money and cocaine necessary to establish Flint's crime of sale to Watkins, could be found at 1408 W. 31st Avenue. We believe that Flint's entrance into the residence on two prior occasions at a time when she was engaged in a sale of cocaine to Watkins coupled with the added safeguard that the warrant only be executed if she returned a third time prior to consummating a sale provided ample probable cause.

■ We stress that the magistrate found probable cause to search the residence, not probable cause to arrest Witwer or anyone else found on the premises. Probable cause to search a residence does not require probable cause to arrest an inhabitant. *See* 1 W. LaFave, *Search and Seizure* § 3.1, at 443 (1978).

While one, or perhaps even two, detours to the Witwer residence during prior drug transactions might be considered coincidental, *compare State v. McManus*, 243 N.W.2d 575 (Iowa 1976), we agree with the magistrate's implicit conclusion that a third detour must be intentionally related to the transaction either as a source of the drugs or as a deposit for the buy-money or both. Either alone would justify a search. *United States v. Chester*, 537 F.2d 173, 175–76 (5th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548 (1977); *United States v. McNally*, 473 F.2d 934, 942 (3rd Cir. 1973); *State v. Hadd*, 619 P.2d 1047, 1053 (Ariz.App.1980); 1 W. LaFave, *Search and Seizure* § 3.2, at 487–90, and § 3.7(d), at 704–16, especially 706–08 (1978).

■ Thus, the sole question presented is whether the possibility, unsupported by anything in the affidavit, that Flint, either alone or by agreement with Watkins, went each time to the 31st Avenue residence either to confuse possible observers as to her source or to intentionally throw suspicion on Witwer, or for some other reason unrelated to her sales of cocaine, is sufficient as a matter of law to preclude the magistrate from finding probable cause? We conclude that such speculation is not sufficient.

In this regard, we note that the affidavit gives the clear impression that Flint was not privy to the police surveillance and, *a fortiori*, that the police had no information that Flint was intentionally setting Witwer up for arrest. Had they such information, its concealment from the magistrate might invalidate the warrant. *Schmid v. State*, 615 P.2d 565, 577 (Alaska 1980). *Cf. Davenport v. State*, 515 P.2d 377, 380 (Alaska 1973); *State v. Davenport*, 510 P.2d 78, 81–82 (Alaska 1973) (both relating to misstatements in the affidavit). Finally, we recognize that sale of cocaine is a hazardous occupation and that if Flint kept large quantities of cocaine in her car or mobile home she would be highly motivated to conceal that fact for fear of a hijacking that might result in her death or serious bodily injury as well as the loss of her cocaine and profits. *See Doisher v. State*, 632 P.2d 242 (Alaska App. 1981). The magistrate, however, could have reasonably concluded that a mere intent to divert attention would not have resulted in the repeated brief visits to Witwer's residence prior to consummation of each sale. Rather, the magistrate could have inferred that the reason for the visits was to obtain the drug or drop off the money rather than to confuse observers or cast suspicion on Witwer. In the absence of evidence indicating that the state knows of any special bias Flint had against Witwer, her motives for casting suspicion on him, if any, are better pursued at trial than during a suppression hearing.

Witwer makes two additional arguments which require attention: (1) that the warrant was served at night (10:40 p. m.) requiring a greater degree of probable cause, and (2) that the affidavit contained false

statements and material omissions independently requiring quashing of the warrant and suppression of any evidence seized pursuant thereto.

■ *Johnson v. State*, 617 P.2d 1117, 1122–24 (Alaska 1980), is dispositive of the first contention. There the court suggested that the requirement in Alaska Rule of Criminal Procedure 37(a)(3)(iv) that the affiant be "positive" that property is in a place to be searched before a search may be authorized after 10:00 p. m. did not create a significantly higher standard than probable cause. The affidavit is satisfactory if the magistrate could, after reviewing the facts contained therein, be reasonably certain that the items to be seized are at the location to be searched. Here the requirement that the warrant be executed when and only if Flint went to the Witwer residence a third time during a cocaine transaction provided sufficient "certainty."

One additional factor not strictly related to the quantum of evidence necessary to justify a magistrate in authorizing a nighttime search requires comment. As LaFave points out, the "positivity" requirement recognizes the potentially greater violation of privacy incident to a nighttime search and thus serves to require some showing of necessity before a nighttime search is authorized, *i.e.*, it must be shown that the legitimate goals of law enforcement could not be served by a daytime search, for instance, on the basis of an apprehension that evidence would otherwise be removed, hidden, or destroyed before a morning search could be consummated. *See* 2 LaFave, *Search and Seizure* § 4.7, at 119 (1978). We believe this suggestion is consistent with our supreme court's treatment of nighttime searches. Here we find sufficient "necessity," noting that the warrant did not specify a nighttime search; rather, it permitted a search at any time contingent on the happening of a highly material event. In so

doing, the magistrate heeded our supreme court's suggestion in *Johnson* that,

> We think it most appropriate in anticipatory warrant situations, that the magistrate insert a direction in the search warrant making execution contingent on the happening of an event which evidences probable cause that the item to be seized is in the place to be searched, rather than directing that the warrant be executed immediately or forthwith.

*Johnson v. State*, 617 P.2d at 1124 n.11.

Here the warrant expressly provided that it could only be executed if the officers observed a sale of cocaine during which Brenda Flint entered the residence described in the warrant. We believe that this limitation gave adequate assurance that the items to be seized would be at the place to be searched and that it warranted an immediate search thereafter.

Witwer's final contention challenges the accuracy of some of the factual assertions contained in O'Brien's affidavit and suggests that material facts were omitted.[3] Historically, where a search warrant is challenged, the challenging party is limited to the four corners of the affidavit in disputing probable cause. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that statements by law enforcement officers deliberately including known falsehoods might serve to vitiate a warrant. This decision was noted by our supreme court in *Cruse v. State*, 584 P.2d 1141, 1147 n.14 (Alaska 1978), and again in *Moreau v. State*, 588 P.2d at 275, 279 (Alaska 1978). In earlier decisions, *Davenport v. State*, 515 P.2d at 380, and *State v. Davenport*, 510 P.2d at 81–82, the court held that material misstatements in an affidavit would vitiate a warrant based upon the affidavit. A statement was defined as material if, without it, the affidavit was insufficient to establish probable cause. *Davenport v. State*,

---

**3.** In this context, we remind bench and bar of our decision in *Rosa v. State*, 633 P.2d 1027, 1031 n.10 (Alaska App., 1981). There we cautioned officers to give a sufficient rendition of relevant facts to enable the magistrate to understand the context in which the reported facts took place.

515 P.2d at 380.[4]  This rule was applied to omissions in *Schmid v. State*, 615 P.2d at 577.

█  Witwer challenges paragraph four of the affidavit, which states that Brenda Flint was observed only to enter and exit 1408 W. 31st Avenue and that she returned with cocaine.  He contends that these were misstatements.  He points out that Flint's contact with Watkins on each occasion originated and concluded at her mobile home and involved a trip in her automobile and that this undisclosed information constitutes material omissions.  Finally, he disputes the ability of the officers conducting the surveillance to state with certainty that Flint ."return[ed] with cocaine" from the Witwer residence.  In response, the state contends her points of origin and destination and her means of transport were irrelevant.[5]  The trial court did not address these contentions and we do not believe that the materiality of these alleged misstatements and omissions can be determined by us as a matter of law.  This determination is one of fact potentially requiring consideration of the credibility and demeanor of witnesses, therefore a remand is necessary.  Since the record has not been fully developed on these issues, a reasonable opportunity should be given the parties to present relevant evidence and authorities.  For cases with comparable facts, *see United States v. Chester*, 537 F.2d at 175–76; *United States v. McNally*, 473 F.2d at 942; *State v. Urrutia*, 539 P.2d 913 (Ariz.App.1975); *State v. McManus*, 243 N.W.2d 575 (Iowa 1976);  1 W. LaFave, *Search and Seizure* § 3.2, at 487–90 (1978).

We find Witwer's other claimed omissions immaterial.  Given the information in the affidavit identifying Flint as a dealer in drugs, we do not consider the omissions of the details of her reputation significant.  By the same token, since Watkins was strip-searched prior to his contacts with Flint and was observed at all times except when he was in her house, the details of his record would seem equally immaterial.[6]

In conclusion, limiting our review to the four corners of the affidavit, we find that the magistrate could properly have found probable cause and we therefore reverse.  Nevertheless, we remand the case to the superior court to determine whether the affidavit contained material misstatements or omissions and, if it finds such deficiencies, to determine whether they invalidate the affidavit and the resulting search.  *See Schmid v. State*, 615 P.2d at 577.

REVERSED and REMANDED for further proceedings.

█

---

4.  Since suppression is ordered pursuant to the exclusionary rule whose purpose is to deter unlawful police conduct, *see, e.g., Moreau v. State*, 588 P.2d at 280, it would seem that some deterrable police conduct would have to be involved in presenting the false statements to the magistrate, whether material or immaterial, before their presence would justify suppression.  It is not necessary for us to reach this question in light of the disposition of this case.  *See Cruse v. State*, 584 P.2d at 1146–47.

5.  The information is clearly relevant.  *See* Alaska R.Evid. 401.  In context, however, relevance and materiality are not synonymous.  *See* the definition of materiality set out in *Davenport v. State*, 515 P.2d at 380 discussed in the text, *supra*.

6.  Our disposition of this case makes it unnecessary to determine whether the allegations in O'Brien's affidavit regarding Witwer's reputation as a dealer in drugs could be considered by the magistrate in finding probable cause.  *See Keller v. State*, 543 P.2d at 1218 n.12;  1 W. LaFave, Search and Seizure § 3.2, at 473–75 (1978).  We note, however, that officers using reputation evidence in an affidavit should give sufficient background facts to show that their beliefs about the suspect are specific and substantiated and not mere street rumors.  *See United States v. Willis*, 633 F.2d 930, 932 (10th Cir. 1980), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 950, 67 L.Ed.2d 117 (1981).