**Sherman R. LEWIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7176.**

Court of Appeals of Alaska.

Sept. 29, 2000.

---

Maria Bahr, Assistant Public Defender, Anchorage, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

*Facts and Proceedings.*

Police officers searched Sherman R. Lewis' home and car under the authority of search warrants which authorized the police to search for evidence of taking a moose illegally and wanton waste of the moose.[1] In executing the search warrant, the police found evidence which resulted in Lewis' indictment for several felony drug crimes. When Lewis moved to suppress, Superior Court Judge Milton M. Souter found that the evidence which the police presented to the magistrate was insufficient to establish probable cause to believe that evidence of the game violations would be found at Lewis' residence. But he concluded that there was an independent basis for upholding the warrant: that the affidavit established probable cause to believe that Lewis had violated a condition of his probation by possessing a firearm and that evidence of this offense would be found at Lewis' residence. Lewis argues that Judge Souter erred in reaching this decision. But we uphold the decision.

Fish and Wildlife Trooper Danny Sides submitted the affidavit in support of the search warrant. The following facts are taken from the affidavit. Trooper Sides was investigating the illegal killing of a moose in the Point McKenzie area. On December 10, 1996, at 4:30 p.m., Trooper Sides interviewed Kenneth Webeck who told Trooper Sides that he saw a man illegally shoot and kill a bull moose in the Point McKenzie area. Webeck stated that the suspect had fired six to eight shots from an "assault" style rifle. The suspect was driving an older model Yamaha snow machine with a single headlight. He was accompanied by another rider who also had a snow machine with a single headlight. Neither man made any attempt to salvage the meat or antlers from the dead animal. Webeck stated he had picked up a spent cartridge from the scene which he gave Trooper Sides. Trooper Sides described the casing as a "point 30 cal. military, 7.62 NATO ([c]ivilian version is .308 cal.) round with 'CAVIM 92' stamped on the bottom of the brass."

Twenty minutes later, Trooper Sides contacted two suspects about one mile from the illegal moose kill. Trooper Sides examined the men's hunting licenses and tags. One of the men was Sherman R. Lewis, Jr. and the other man was Robert L. Lemoine. Trooper Sides saw Lewis place an assault style rifle in a rifle case. When he was talking with Lewis, Trooper Sides saw Lewis drop a cartridge on the ground. Trooper Sides picked up the cartridge and saw that it had "CAVIM 92" stamped on the bottom. Sides stated that Lewis was riding on an older model Yamaha snow machine with a single headlight and that Lemoine also had a snow machine with a single headlight. Sides also obtained the license number of the blue Ford Bronco which the men were driving and using to pull a trailer with the snow machines.

Trooper Sides then visited the site where the bull moose had been killed that morning.

1. 5 AAC 85.045(a) (hunting season and bag limits for moose); AS 16.30.010 (wanton waste of big game animals and wild fowl).

Sides described the moose as an illegal bull which had been killed by several rounds from a small caliber rifle.

The next day, Sides learned from computer records that Lewis had "a [f]elony conviction involving weapons." The records directed any law enforcement officer who had contact with Lewis to contact his probation officer. Trooper Sides contacted John Baiamonte, Lewis' probation officer. Baiamonte told Sides that Lewis was not allowed to be in possession of a firearm. He gave Sides Lewis' address. Fish and Wildlife Aide Larson went to the address and found the blue Ford Bronco and two snow machines.

Trooper Sides presented his affidavit to the magistrate to obtain a search warrant for evidence of the crimes of illegally taking a bull moose and wanton waste of the game. The magistrate issued a warrant authorizing the police to search Lewis' residence for evidence of these crimes. The warrant authorized the police to search for evidence of the game violations, including the assault style rifle and 7.62 caliber NATO military style ammunition with "CAVIM 92" stamped on the base of the bullet.

Based on comments made by Lewis' probation officer, Trooper Sides had reason to believe that Lewis was a heroin dealer. The warrants were executed on December 13, 1996 by Trooper Sides and six to eight other law enforcement officers. Probation Officer Baiamonte participated in the search. Trooper Sides knocked on Lewis' door and announced himself three times. He received no response, but heard scrambling noises inside. The officers then kicked the door in. The time between the first knock and the forced entry was about one minute. Upon entry, State Trooper Nashalook heard the toilet flush on the second level of the house. He ran upstairs and found Lewis sitting on the toilet with his shorts pulled up. Trooper Nashalook looked into the toilet bowl and

saw a white substance dissolving rapidly. The trooper got a cup and scooped the white substance out of the toilet. He conducted a field test on the substance, which tested positive for cocaine. Troopers then obtained an additional warrant to search for evidence of a drug violation.

A jury found Sherman R. Lewis guilty of misconduct involving a controlled substance in the third degree,[2] a class B felony; misconduct involving a controlled substance in the fourth degree,[3] a class C felony; three counts of misconduct involving weapons in the second degree (possession of a firearm during a felony drug offense),[4] class B felonies; and tampering with physical evidence,[5] a class C felony. In addition, Lewis pled no contest to two counts of misconduct involving weapons in the third degree (felon in possession),[6] class C felonies. Judge Souter imposed a composite sentence of 18 years to serve.

*Omissions and Misstatements in Original Affidavit.*

■■■ Lewis first contends that Judge Souter erred in denying his motion to suppress the evidence which the police obtained from the search of his residence and car. In his motion, Lewis contended that Trooper Sides' affidavit contained material misstatements and omissions and did not establish probable cause to search for evidence of the game violations. He also contended that the police illegally exceeded the scope of the warrant when they obtained the cocaine from the toilet bowl. Following an evidentiary hearing at which Trooper Sides testified, Judge Souter issued a decision. Judge Souter first relied on *State v. Malkin.*[7] *Malkin* sets up a framework for evaluating the validity of a search warrant that is based, in part, on intentional, reckless, or negligent misstatements. First, the defendant must point out statements that are false.[8] Once the defendant has made this showing, the burden

2. AS 11.71.030(a)(2).

3. AS 11.71.040(a)(2).

4. AS 11.61.195(a)(1).

5. AS 11.56.610(a)(1).

6. AS 11.61.200(a)(1).

7. 722 P.2d 943 (Alaska 1986).

8. *Id.* at 946.

shifts to the state to show that the statement was not intentionally or recklessly made.[9] If the statement was intentionally made, then the search warrant is invalidated.[10] If the statement was recklessly made, then that statement is excised and the remainder of the affidavit is evaluated for probable cause.[11] If the statement was made negligently, then it is not excised.[12] The *Malkin* analysis also applies to omissions in search warrant affidavits:

[O]nce a misstatement or *omission* is established, the burden of proving that it was neither reckless nor intentional shifts to the state. A failure to meet this burden will vitiate the warrant if the misstatement or omission is material, that is, if deletion of the misstated information from or inclusion of the omitted information in the original affidavit would have precluded a finding of probable cause. A non-material omission or misstatement—one on which probable cause does not hinge—requires suppression only when the court finds "a deliberate attempt to mislead [the magistrate]." [13]

Judge Souter applied this analysis and found that the state had not presented sufficient evidence to show that several omissions of "highly material facts" in Trooper Sides' affidavit were not reckless. Two of the omissions which Judge Souter considered bear comment. First, Judge Souter found that Trooper Sides recklessly omitted the fact that witness Webeck saw the moose shooting at 10:30 a.m.—six hours before Sides had contact with Lewis. This omission was material because, based on the affidavit, which lacked an explanation of when Webeck saw the shooting and when Sides encountered Lewis, the magistrate would have the impression that the events were virtually contemporaneous. This would make it more likely that Lewis was the person who shot the moose. Therefore, the evidence of the six-hour time gap was material exculpatory evidence.

Judge Souter also found that Trooper Sides recklessly omitted a conflict between Webeck's description of the color of the shooter's snow machine and the color of the snow machines Lewis and Lemoine were driving. Sides testified at the hearing that Webeck told him that he saw the shooter riding a snow machine with a white cowling. Sides testified that he saw Lewis and Lemoine load blue or dark-colored snow machines on to their trailer. Sides omitted these descriptions of the snow machines from his affidavit. The information appears to be material since it would shed doubt on the conclusion that the snow machines that Lewis and Lemoine rode were the machines Webeck had seen the moose shooters riding. Judge Souter's determination that the trooper's omission of this material from the affidavit was reckless is not clearly erroneous.

From the information in the search warrant affidavit, when it is modified by the material omissions which Judge Souter found should be added to the affidavit, we conclude, as did Judge Souter, that the affidavit in support of the search warrant did not establish probable cause that Lewis was the person who committed the game violation and therefore that evidence of that offense would be found at his residence. There is nothing in the affidavit which would establish, and it is far from obvious to us, that the ammunition which Lewis possessed was unusual. The fact that Lewis was in the general area of the moose kill with a partner on snow machines with an assault style rifle several hours after the violations does not appear to be sufficient, when coupled with the other information in the affidavit, to establish probable cause.

*Probable Cause to Search Lewis' Residence and Vehicle for Evidence of a Probation Violation.*

■ We now turn to Judge Souter's findings that the affidavit established proba-

---

**9.** *Id.*

**10.** *Id.* at 946 n. 6.

**11.** *Id.* at 946.

**12.** *Id.* at 946–47.

**13.** *Lewis v. State*, 862 P.2d 181, 186 (Alaska App.1993) (quoting *Malkin*, 722 P.2d at 946 n. 6) (remaining citations omitted) (emphasis added).

ble cause to search for evidence of a probation violation. Judge Souter concluded that there was no "requirement that probable cause be limited to the charged crime or a crime specified in the warrant or in the magistrate's statement of probable cause. In essence, there is no Fourth Amendment requirement that the crime under investigation be specified." Judge Souter relied on three cases, two from Illinois and one from Connecticut.[14] These cases stand for the proposition that even if the warrant does not state the crime under investigation or improperly states the crime under investigation, the warrant will still be upheld if it establishes probable cause to search a particular place for the evidence named in the warrant.

It does seem clear that the warrant established probable cause that Lewis was in violation of his conditions of probation by possessing the assault rifle. Trooper Sides knew that Lewis had a "felony conviction involving weapons." Lewis' probation officer told Sides that Lewis was not allowed to be in possession of a firearm. It is a reasonable inference from this information that Lewis' conditions of probation provided that he was not to be in possession of any firearm and that he had violated that condition of probation. Therefore, within the affidavit, the magistrate had information which established probable cause to search for the assault rifle and the ammunition as evidence of the probation violation, and probable cause to believe that this evidence would be found at Lewis' residence.

Lewis argues that even if this is so, the police did not seek the warrant to look for evidence of a probation violation and the magistrate did not grant it on that ground. But the United States and Alaska Constitutions state merely that "[n]o warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[15] The literal language of the United States and Alaska Constitutions requires only that the warrant establish probable cause to search, and describe the place to be searched and the thing to be seized. In the present case, the warrant did establish probable cause to search Lewis' residence and vehicle for the assault rifle, ammunition, and other evidence of Lewis' probation violation. The fact that the magistrate and the police may have believed that these items were also evidence of Lewis' game violation does not appear to us to be controlling.

Two principles lead us to conclude that the better course of action is to uphold the warrant. The first principle is that an appellate court may uphold a trial court's decision on any basis existing on the record, even though it is different from the reason relied upon by the trial court.[16] Applying this principle to the magistrate's decision to issue the warrant, it seems reasonable to uphold the magistrate's decision because, even if the warrant did not establish probable cause to search for evidence of the Fish and Game violation, it did establish probable cause to search for the rifle and the ammunition as evidence of the probation violation.

The second principle is that when the police conduct a search without a warrant, we do not look to what the police subjectively believed was the justification for their conduct; we look to determine whether the information which the police had objectively supported the search.[17] If the search

---

14. *State v. Vincent*, 229 Conn. 164, 640 A.2d 94 (1994); *State v. Casillo*, 99 Ill.App.3d 825, 55 Ill.Dec. 206, 425 N.E.2d 1379 (1981); *People v. Hanei*, 81 Ill.App.3d 690, 38 Ill.Dec. 1, 403 N.E.2d 16 (1980).

15. U.S. Const. amend. IV; Alaska Const., art. I, § 14.

16. *See Romann v. State, Dept. of Transp. and Public Facilities*, 991 P.2d 186, 190 n. 10 (Alaska 1999); *DeNardo v. GCI Communication Corp.*, 983 P.2d 1288, 1290 (Alaska 1999).

17. *See Snider v. State*, 958 P.2d 1114, 1118 (Alaska App.1998) (officer stated he arrested defendant on weapons charge, but officers objectively had sufficient evidence to conduct a warrantless search for drug evidence); *Beauvois v. State*, 837 P.2d 1118, 1121–22 n. 1 (Alaska App.1992) (officer's subjective intent in stopping the vehicle is irrelevant; "[T]he test is whether, under the facts known to the police officer, the stop ... was objectively justified."); *State v. Kendall*, 794 P.2d 114, 117 (Alaska App.1990) ("trial court should analyze the objective information which the police had at the time when they made an arrest in

is objectively justified, it is immaterial whether the police stated the correct reason for their search. Certainly, we want to encourage the police to seek search warrants whenever possible rather than to conduct searches without warrants. It would be inconsistent to uphold a warrantless search which is objectively reasonable but to condemn a search with a warrant when the information presented in support of the warrant objectively justifies the search for items specifically listed in the warrant.[18]

A case which illustrates this principle is *State v. Green*.[19] In *Green*, the defendant's girlfriend, with whom he lived, disappeared. The police wanted to search Green's house for information which might lead to an explanation of her disappearance. The reviewing court ignored the police's belief that they were searching, not for evidence of a crime, but to help explain the girlfriend's disappearance. The appellate court concluded that the warrant contained a sufficient factual basis from which the magistrate could have found that the girlfriend's disappearance had resulted from criminal activity and that a reasonable person could infer that evidence of the activity would be found at Green's residence. Therefore, in upholding the warrant, the court looked to the objective information supporting the warrant. Similarly, in the present case, where the information supporting the warrant authorized the police to search for evidence named in the warrant (the assault rifle and ammunition), we should uphold the search.

We therefore agree with Judge Souter that the affidavit in support of the warrant established probable cause to believe that Lewis had violated a condition of his probation by possessing the assault rifle and that evidence of this probation violation would be found in Lewis' car or home. We accordingly uphold Judge Souter's decision.

*Items for which Police Had Authority to Search.*

■ The next question we must answer is whether the affidavit, as so interpreted, established probable cause to search for and seize the specific items listed in the warrant.[20] We conclude that it did. The original warrant authorized the police to seize the assault rifle, ammunition, clothing, hunting license, and other evidence connected to Lewis' hunting activities on December 10, 1996. All of these items were also evidence that Lewis was in possession of and was using firearms in violation of his conditions of probation on that date. In addition, the affidavit establishes probable cause to believe that all of these items would be found at Lewis' residence. We conclude that the warrant, as we have interpreted it, validly authorized the police to seize all the specific items listed in the warrant.

*Execution of Warrant.*

■ Lewis contends that the service of the search warrant was merely a subterfuge to conduct a search of Lewis' home to search for evidence of a drug offense. He also argues that the search exceeded the scope of the warrant because the police searched for drugs, not the items named in the warrant.

Judge Souter found "that the evidence does not support the conclusion that the first search was a pretext to justify the second search. The evidence at most demonstrates that the officers strongly suspected that they would discover drugs and related paraphernalia in the defendant's apartment." He found that "the drugs were found in plain view in the defendant's apartment during the officers' valid search of the defendant's apartment pursuant to the initial warrant[.]"

The police had a warrant which, as we interpret it, authorized them to search for evidence of Lewis' probation violation for possessing a firearm. As noted, the police

determining whether there was probable cause to make that arrest"); *see also* 2 Wayne R. La-Fave, *Search and Seizure* § 3.2(b) at 33–37 (3d ed.1996).

18. *See* 5 Wayne R. LaFave, *Search and Seizure* § 11.7(c) at 410–15 (3d ed.1996) (discussing appellate review of probable cause determination).

19. 540 N.W.2d 649 (Iowa 1995).

20. *See* 2 Wayne R. LaFave, *Search and Seizure* § 4.6(f) at 580–83 (3d ed.1996).

had authority to search for the assault rifle, the ammunition, and other items listed in the original warrant. The fact that the police had information that Lewis was a drug dealer and that they might find evidence of drug offenses at his residence did not affect the police authority to search under the warrant. For instance, in *State v. Davenport*,[21] the police had probable cause to believe that Davenport had stolen handguns at his residence. The police were also informed that they might find furs which were proceeds from a burglary. An informant told the police that he had seen Davenport place the furs in an attic. The police obtained a warrant to search for the guns and, during the search, searched the attic, finding the furs. The police did not find any handguns, but seized the furs.[22] Davenport argued that the police's seizure of the furs was illegal because the police had engaged in a pretext, searching for the furs instead of for the guns. The supreme court rejected this contention.

Davenport's argument is that since the police had reason to believe they might find the furs in the attic, the search lacked good faith. There is no evidence in the record to suggest that the search for the guns was a pretext to conduct a search for the furs. The search for the handguns was undertaken pursuant to a valid warrant and conducted within the scope of the objectives of that warrant. The warrant was not employed as a means for exercising a general search. There was no evidence produced to suggest that the search would have been less extensive or in any way conducted differently had the police not received information relating to the furs. We cannot agree that simply because the police had reason to believe that they might find certain furs in the course of their search, that the search was therefore tainted with bad faith. The underlying basis for the intrusion into the Davenport home was legitimate, and the search was conducted in a lawful manner. Thus,

we conclude that the search was conducted in good faith.[23]

Similarly, in the present case, the police had a warrant which, as we have construed it, authorized them to search for evidence of Lewis' probation violation. The fact that the police believed that they might find evidence of a drug offense does not affect the validity of the warrant as long as the police confined their search to the scope of the warrant as we have construed it—that is, limited their search to areas where one might reasonably expect to find firearms, ammunition, or other evidence of the probation violation listed in the warrant.

■ Lewis argues that the police, who were executing a warrant to search for evidence of a probation violation, exceeded the scope of their authority by rushing upstairs and seizing the cocaine from the toilet. He argues that the police were really searching for drugs rather than for the evidence which the warrant authorized them to search for, evidence of the probation violation. In his treatise on search and seizure, Professor LaFave describes the rule that courts apply when the police seize items which are not named in the warrant under authority of the plain view doctrine.[24] He states that if the police find items when they are looking in places where items authorized by the warrant could be located before they have discovered the items authorized by the warrant, then the discovery of the items was authorized by plain view.

If the items were discovered before those to which the warrant was properly addressed were found and while the police were looking in places where the latter objects could be located, then it may be said that the discovery occurred while executing the lawful portion of the warrant.[25]

In Lewis' case, the police knew that they were entering a home in which they were expecting to find guns and drugs. Once Lewis did not open the door and the police heard scrambling noises inside, it was appro-

21. 510 P.2d 78, 86 (Alaska 1973).

22. *Id.* at 81.

23. *Id.* at 86.

24. *See* 5 Wayne R. LaFave, *Search and Seizure* § 4.6(f), at 582 (3d. ed.1996) (footnotes omitted).

25. *Id.*

priate for them to enter the residence forcibly and locate Lewis to insure that he did not offer armed resistance. When Lewis, after running upstairs, attempted to flush the toilet, it was reasonable for the police to conclude that Lewis was attempting to dispose of evidence that police had authority to search for and seize under the warrant; for instance, small items like ammunition or a hunting license. When Trooper Nashalook saw the cocaine in plain view in the toilet, he was authorized to seize it. Consequently, we conclude that Judge Souter did not err in finding that the police seizure of the cocaine, which was in plain view when Trooper Nashalook looked in the toilet, did not exceed the scope of the warrant.

### Criminal Rule 45.

■ Lewis argues that Judge Souter erred in failing to dismiss his case under Criminal Rule 45, the Speedy Trial Rule. He first contends that Judge Souter erred by tolling the period from June 26, 1997 to July 21, 1997. At a pretrial hearing held on June 26, 1997, Lewis' counsel requested a continuance and Lewis executed a written waiver of Criminal Rule 45 from August 11, 1997, when his case was set for trial, until October 6, 1997. Lewis wrote the word "pressure" on the waiver. Later, Lewis wrote to Judge Souter asking for a hearing to explain why he signed the waiver. At a hearing on July 21, 1997, Lewis told Judge Souter that he had not wanted the continuance. Judge Souter concluded that the Criminal Rule 45 waiver was invalid. But, relying on *State v. Jeske*,[26] he concluded that the time period from June 26, 1997 until July 21, 1997 was excluded from Criminal Rule 45. Lewis argues that this was error. But *Jeske* holds that:

> When a defendant asserts that he or she never consented to a continuance obtained or stipulated to by defense counsel, Rule 45 remains tolled until the judge makes an affirmative finding that the defendant did

not consent to the previously ordered continuance.[27]

Therefore, Judge Souter did not err in excluding the time period.

■ Lewis points out that, even under Judge Souter's calculations, his trial was held two days over the 120–day limit. Judge Souter started his Criminal Rule 45 calculations on December 24, 1996. But on February 13, 1997, Lewis requested a change of plea hearing. Judge Andrews conducted this change of plea hearing on March 24, 1997. At this hearing, Lewis stated that he did not change his plea; instead he had questions and did not wish to plead no contest at that time.

In *Mustafoski v. State*,[28] this court addressed the issue of Rule 45 calculations in a situation where a defendant announces an intention to change his plea, then renews his intention to go to trial. In *Mustafoski*, this court held that the Rule 45 clock is restarted at Day 1 when a defendant withdraws a formally entered plea or announces that he no longer intends to change his plea.[29]

Based on this court's holding in *Mustafoski*, Judge Souter should have established March 24, 1997 as Day 1 in his Rule 45 calculation. Taking this correction into account, a total of 108 days would have counted toward Rule 45 as of November 17, 1997, when Judge Souter issued his ruling on Lewis' Rule 45 motion. The trial commenced on December 1, 1997. The days between November 17, 1997 and December 1, 1997 were tolled as a result of the defendant's motion to suppress.[30] We therefore conclude that Criminal Rule 45 was not violated.

### Possession of Firearm During Felony Drug Offense.

■ Lewis argues that we must reverse his convictions for possession of a firearm during the commission of a felony drug offense (AS 11.61.195(a)(1)). In *Col-*

**26.** 823 P.2d 6 (Alaska App.1991).

**27.** *Id.* at 10 (footnote omitted).

**28.** 954 P.2d 1042 (Alaska App.1998).

**29.** *Id.* at 1044.

**30.** *See* Alaska Criminal Rule 45(d)(1) (excluded periods).

*lins v. State,*[31] we held "that AS 11.61.195(a)(1) requires proof of a nexus between a defendant's possession of a firearm and the defendant's commission of the felony drug offense." In *Collins,* we found plain error because "the indictment returned against Collins did not allege this element of the offense and the jury at Collins' trial made no finding with respect to this element."[32] The state asks us to reconsider *Collins,* but we reaffirm that decision. The state also argues that the state presented sufficient evidence to prove a nexus between the drugs and the two handguns which were found in Lewis' residence. But, as we stated in *Collins,* since the state never presented evidence of this element of the offense to the grand jury and the trial jury never was asked to evaluate this evidence at trial, there is no basis to sustain the convictions. We accordingly REVERSE Lewis' indictment and convictions for possession of a firearm during a felony drug offense.[33]

Lewis' convictions for possession of a firearm during a felony drug offense are REVERSED. In all other respects, his convictions are AFFIRMED.

---

**31.** 977 P.2d 741 (Alaska App.1999).

**32.** *Id.* at 753.

**33.** Lewis argues that his sentence is excessive. But because we have reversed his convictions for possession of a firearm during a felony drug offense, we accordingly decline to address Lewis' sentencing issues at this time.