This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **NO.   30,479**

**SALVADOR RUIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Gary K. King, Attorney General
William Lazar, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

**{1}** Salvador Ruiz (Defendant) sought to withdraw his guilty plea prior to sentencing based on his attorney's failure to adequately advise him of the immigration consequences of his plea agreement. The district court did not find his allegations to be a credible indictment of his attorney's performance and denied his motion, from which Defendant appeals. We agree with the district court and affirm.

## I.    INTRODUCTION

**{2}** The parties do not dispute the procedural facts, nor the content of the testimony received by the district court in its hearing on the motion. The testimony itself is simply and diametrically opposed between Defendant and his wife on one hand and Defendant's attorney, Matthew Madrid, on the other. Defendant and his wife maintained that Madrid had promised probation and had not discussed the certainty of Defendant's deportation upon conviction. Madrid testified that, on at least four occasions, he recalled specific conversations on the subject of certain deportation. Both sides agree that Defendant's wife acted as his interpreter in conversations with Madrid concerning the range of consequences should he be convicted of a second-degree felony involving a sex crime with a minor. Our decision rests on the district court's inherent ability to resolve the contradictory testimony from the witnesses as to the content and nature of attorney-client communications. Our review is for

2

substantial evidence to support a discretionary ruling. We will discuss the facts as needed for our decision.

## II.    BACKGROUND

{3}    Defendant was indicted for various crimes, all of which involved sexual misconduct with a minor under thirteen years of age. At various times prior to the trial scheduled for late October 2010, Defendant and Madrid discussed whether he should enter into a plea agreement. Defendant was reluctant to do so. Madrid spoke little Spanish, and Defendant spoke little English, so Defendant and Madrid predominantly communicated by using Defendant's wife as a translator. Ultimately, on November 30, 2009, Defendant pled guilty to one count of attempted criminal sexual penetration (CSP) of a minor under thirteen in the first degree, which is a second-degree felony.

{4}    Defendant and Madrid met and reviewed the plea the night before. When Defendant entered his guilty plea, he went over the plea documents prior to the hearing with Madrid and the court interpreter. Defendant then signed the documents. The documents signed by Defendant on that day included the notification that he would have to register as a sex offender, stated the maximum sentence of nine years incarceration available under the charge, and incorporated his statement that his attorney had advised him of the immigration consequences of the plea agreement. The

3

district court signed a similar certification on the plea proceeding, after directly questioning Defendant through an interpreter as to his awareness that his plea could have immigration consequences, and that he had discussed the matter with his attorney and received affirmative answers on the record. Testifying later, Defendant acknowledged understanding that, according to the papers he signed, there "might be a deportation." The district court accepted the plea.

{5}     Less than two weeks later and prior to sentencing, a new defense attorney moved to substitute himself in place of Madrid and quickly moved to withdraw Defendant's guilty plea. The substitution was granted, and the motion to withdraw the plea was set for hearing.

{6}     At the motion hearing, Defendant asserted that his plea was based on Madrid's advice that any deportation proceedings instituted as a result of his pleading to the attempted CSP charge were defensible because he was a legal resident alien and would receive probation. Defendant alleged that he had since found out from an immigration attorney that was not the case, and he instead faced certain deportation. Defendant attached affidavits from himself and his wife to his motion, stating the above facts and that he had learned about the automatic deportation after he had entered into the plea. Defendant and his wife both testified that Madrid had promised that the plea would result in probation and had not spoken of immigration

consequences. Defendant stated that, if he had known of the automatic deportation, he would not have pleaded guilty, but would have proceeded to trial. Defendant consequently sought to withdraw his plea under *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, and *State v. Carlos*, 2006-NMCA-141, 140 N.M. 688, 147 P.3d 897.

{7}     In the hearing that followed, neither Defendant nor his wife wavered from their position that Madrid had conveyed only that he would work to ensure that Defendant would get probation and be able to defend a deportation action. Defendant stated that Madrid had not suggested that he consult with an immigration attorney, nor informed him that deportation was a certainty. Defendant testified that, at the plea proceeding, he realized that he might be deported, but that was not consistent with Madrid informing him that he would do whatever he could so Defendant would not be deported.

{8}     During the motion hearing, Madrid testified that, while representing Defendant for about a year, he recalled informing Defendant and his wife of the immigration consequences on four occasions. He had informed both Defendant and his wife that, owing to the severity of the accusation against Defendant, sex offender registration and deportation were unavoidable upon any conviction, as was doing some mandatory time in prison. Madrid testified that he was familiar with immigration statutes,

particularly, the sections defining aggravated felonies, which include attempted CSP of a minor. He recalled that he informed Defendant about deportation being the consequence of pleading to attempted CSP, even though it was not a charge in the original indictment. Madrid also testified that he had discussed the consequences of illegal re-entry into the United States should Defendant attempt to return after deportation. Madrid believed that both Defendant and his wife understood the advice he had provided. He stated that he had sent Defendant and his wife home with the plea the night before Defendant entered his plea in court and had gone over it with Defendant and a court interpreter the morning of the change of plea proceeding. Madrid further testified that he would not have proceeded with the plea if he had any doubts about whether Defendant misunderstood any of the plea agreement terms. He testified that he never left a conversation about the case with Defendant and his wife without feeling like he had adequately answered all questions that had arisen. Madrid denied making statements about the likelihood of probation or defensibility of any deportation action.

{9}    As to his knowledge of the consequences of Defendant's plea, Madrid testified that he had five years of experience practicing criminal law. Despite lacking formal training in immigration law, he was familiar from his practice with federal immigration statutes, 8 U.S.C. §§ 1101 (2012), 1227 (2008), 1229 (2006), "that deal

6

with . . . when someone would be deported after being convicted of a crime." Specific to Defendant's situation, Madrid testified that he had at least four conversations with Defendant and his wife discussing possible plea agreements. The night before the plea, Madrid remembered Defendant "trying to get me to say that there was a way he was not going to be deported." He testified that he told Defendant that, in his experience, the only client who had not been deported was one who had been given a deferred sentence on a misdemeanor and who had still experienced significant immigration problems. Madrid further testified that he informed Defendant, "in no uncertain terms, that probation was not an option in my mind." This was based on his assessment of the case from the witness interviews and his experience. Madrid stated that they had also discussed immigration status. He testified that, on the first day he met Defendant, he told him that any plea offer that would be forthcoming from the State "would require deportation and a sex offender registration." He advised Defendant to all possible consequences of the three charges, and Defendant appeared to understand. After witness interviews, Madrid again discussed a pending plea offer, deportation, and illegal re-entry into the United States with Defendant and his wife. He testified that he recalled another telephone conversation in which he was specific that a plea would involve mandatory time, sex offender registration, and deportation, and that this conversation was somewhat heated. He recalled a conversation in which

Defendant's wife asked if there was any possibility of probation or no deportation, and he informed her that was not possible. Madrid testified that, in all the plea discussions he had with the State, probation was never discussed as an option.

{10} The district court denied Defendant's motion to withdraw his plea, stating that there was no credible evidence supporting his position that Madrid had not adequately represented him. The district court stated that Defendant's testimony had been very narrow and incongruous in light of the severity of the charges he faced, specifically, the potential for nine years of imprisonment, which weakened the credibility of his testimony that he relied on Madrid's assurance that he would get probation and not be deported. Last, the district court stated that, in light of Defendant's testimony about having gone through the process of becoming a registered legal resident, there could be no question in the Defendant's mind that persons who commit crimes in this country are subject to deportation. The district court did not give much weight to Defendant's or his wife's testimony. Consequently, the district court regarded Defendant's plea as voluntary, and Madrid's representation of him as sufficient. Defendant appealed after sentencing.

**III.   DISCUSSION**

**A.   Standard of Review**

{11}    "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion." *State v. Garcia*, 1996-NMSC-013, 121 N.M. 544, 546, 915 P.2d 300, 302; *see Paredez*, 2004-NMSC-036, ¶ 5. An abuse of discretion would be established if undisputed facts established that the plea was not knowingly and voluntarily made by the defendant. *Id.* Misinforming a criminal defendant and failing to inform a defendant of the immigration consequences of a plea are objectively unreasonable and constitute deficient performance. *State v. Ramirez*, 2012-NMCA-057, ¶ 17, 278 P.3d 569, *cert. granted*, ___-NMCERT-___, 294 P.3d 1244 (No. 33,604, June 5, 2012). This includes incorrect advice, no advice, and advice insufficient to support an informed decision to plead guilty. *Id.* By alleging that Defendant was incorrectly advised that deportation could be avoided despite his plea, his motion made a prima facie case of ineffective assistance that required a hearing. *Paredez*, 2004-NMSC-036, ¶ 15. Establishing entitlement to a hearing is not carrying Defendant's burden of providing sufficient evidence to demonstrate that the plea should be withdrawn. *See State v. Clark*, 108 N.M. 288, 292, 772 P.2d 322, 326 (1989) (holding that the defendant must show that the trial court abused its discretion by denying withdrawal of the plea). We review claims of ineffective assistance of counsel as mixed questions of law and fact. *Carlos*, 2006-NMCA-141, ¶ 9. Questions of fact are reviewed "in

9

a light most favorable to the prevailing party, as long as the facts are supported by substantial evidence." *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19; *see State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. While reviewing the sufficiency of the evidence supporting the defendant's allegations, we also indulge a presumption that his counsel provided adequate representation. *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. The question of whether the defendant received ineffective assistance is then a legal question, which we review de novo. *Carlos*, 2006-NMCA-141, ¶ 9.

**B.      The District Court Did Not Abuse Its Discretion**

{12}      We initially note that Defendant's motion to withdraw his plea was made very soon after he pled prior to his sentencing and was heard by the same judge who took the plea. We thus cannot discount the district court's first-hand experience with the case and the subsequent diametrically opposed testimony of Defendant and Madrid at the plea proceeding. Advising Defendant in a case in which he was charged with three sexual offenses involving a child under the age of thirteen, Madrid was certainly aware of the gravity of Defendant's situation and testified concerning his familiarity with federal statutes, mandatory sex offender registration, and his certainty that Defendant faced automatic deportation if convicted. There was no doubt that a consequence of Defendant's plea would be registration as a sex offender, and

10

Defendant makes no claim that this collateral consequence was not explained to him. *Paredez* clearly notes that criminal sexual contact of a minor is an automatically deportable offense. 2004-NMSC-036, ¶ 4. Judge Vigil's concurring opinion in *Carlos* points out that attempts to commit crimes of violence are similarly treated. 2006-NMCA-141, ¶ 31 (Vigil, J., specially concurring).

{13} Defendant's brief recounts at length the extent of discussions, family influence, and possible use of a polygraph as a tool to ascertain with him the propriety of a plea. The State's brief goes to great pains to outline Madrid's testimony in terms of both frequency and content of the conversations he had on the subject. Madrid testified that he had no reason to believe that Defendant's wife failed to convey his meaning when translating. The district court examined Madrid and specifically determined that Defendant was aware that a sex crime of any sort, including attempt against a minor, is a deportable offense and had so informed Defendant.

{14} Defendant argues that the proper standard of representation is that, in every case, an attorney must employ a rote process. The attorney evaluates specific federal statutes, specifically equates those crimes requiring certain deportation with those his client faces, and gives specific advice. *Id.* ¶ 14. Defendant emphasizes that Madrid testified that he did not specifically look up statutes, nor follow *Carlos*'s laundry list of actions. *Id.* ¶ 16. We see *Carlos*'s interpretation of *Paredez* as more general and

realistic, adopting a "general rule" that requires criminal defense counsel to determine the immigration status of the defendant. *Carlos*, 2006-NMCA-141, ¶ 14. An attorney must be sufficiently aware of federal immigration law so as to enable him to give a defendant "a definite prediction as to the likelihood of deportation based on the crimes to which a defendant intends to plead and the crimes listed in federal law for which a defendant can be deported." *Id.* In short, there is a point at which an attorney's experience can provide the basis for his or her knowledge that conviction for certain crimes begets unavoidable immigration consequences. An exhaustive review of immigration law is not always necessary.

{15} In this case, Defendant's second attorney established that Madrid had not specifically consulted with an immigration attorney prior to giving advice to Defendant. However, Madrid stated that he already knew that sexual abuse of a minor was an aggravated felony under 8 U.S.C. § 1101. Madrid testified that he knew that the specific crime to which Defendant pled was one that would result in deportation. He also testified that he has had several clients who have been deported and was familiar with the list of aggravated felonies that would require deportation.

{16} In *Paredez*, the Supreme Court specifically took notice of the inescapable immigration consequences of a plea to a charge of criminal sexual penetration of a minor. 2004-NMSC-036, ¶ 4. The specially concurring opinion in *Carlos* lays out

12

the interrelationship of 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229(a)(3), and 1101(a)(43). *Carlos*, 2006-NMCA-141, ¶ 31 (Vigil, J., specially concurring). We regard any insistence that Madrid should have cited specific statutes to Defendant in this case superfluous, in light of the clear advice he gave based on his experience and general knowledge of the law through using it in his practice. Madrid knew that Defendant would receive a mandatory amount of time in prison, have to register as a sex offender, and would be deported. Madrid testified unequivocally that he alerted Defendant to the conclusive likelihood of deportation. He was similarly unequivocal in testifying that he did not tell Defendant he would get probation or have a good chance at fighting deportation.

{17} The district court found that Defendant had not credibly proven that Madrid failed to adequately advise him of the consequences of pleading guilty to a charge of attempted CSP of a minor. To the extent that *Paredez* requires a showing of failure to advise of specific immigration consequences involving almost certain deportation together with showing prejudice to the defendant, failure to establish the first element of the *Paredez* test obviates any need to consider any prejudice to the defendant. 2004-NMSC-036, ¶¶ 14, 16. The testimony was, as we mentioned above, diametrically opposed. It is the job of the fact finder to resolve conflicts in the evidence. Thus, it was the district court's prerogative to regard either side's testimony

13

as credible and decide to accept Madrid's testimony, which established the reasonableness of his action by substantial evidence. Our review of the testimony leads us to no different conclusion. Additionally, our opinions since *Paredez* have taken a dim view of the value of self-serving statements. Because courts are reluctant to rely solely on the self-serving statements of a defendant, which are often made after he has been convicted and sentenced, a defendant is generally required to adduce additional evidence to prove that there is a reasonable probability that he would have gone to trial. *Patterson v. LeMaster*, 2001-NMSC-013, ¶¶ 29, 31, 130 N.M. 179, 21 P.3d 1032 (stating that the Supreme Court also looked to extrinsic evidence that the defendant had been steadfast in maintaining his innocence, and the strength of the evidence against him to more objectively assess his veracity when stating that he would have taken his chances at trial). No extrinsic evidence was invoked or was before the district court in this case. The record concentrates only on the allegations by Defendant and his wife that Madrid provided deficient advice and hollow promises of probation. As such, their credibility in the mind of the district court is the criterion on which Defendant's case rose and fell. Substantial evidence supports the district court's decision, and ineffective assistance is not established by the facts as a matter of law.

**IV. CONCLUSION**

{18} We conclude that the denial of Defendant's motion by the district court was within its discretion and reasonably based on the district court's experience with the case and evidence presented in the motion hearing. The district court's denial of Defendant's motion to withdraw his plea was not erroneous, and we affirm the district court.

{19} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**